THE CIRCUIT COURT OF **Union** COUNTY, ARKANSAS

_6_ DIVISION [Civil, Probate, etc.]

Carla Gibson, Lee Warden, Windell Lawson et al.
_____
Plaintiff

v.                                      No. $CV$-2013-0006 -6
_____
Clean Harbors El Dorado, LLC, a/k/a Ensco, a/k/a MSE Environmental

Defendant

### SUMMONS

## THE STATE OF ARKANSAS TO DEFENDANT:

Clean Harbors El Dorado, LLC, a/k/a ENSCO, a/k/a MSE Environmental
_____     [Defendant's name and address.]

c/o The Corporation Company, Agent for Service
_____

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Robert L. Depper, Jr., 101 West Main St., Suite 200, El Dorado, AR 71730

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office
Union County Courthouse

El Dorado, AR 71730

[Signature of Clerk or Deputy Clerk]

Date: _____



No. _____ **This summons is for** Clean Harbors El Dorado, LLC, a/k/a Ensco, a/k/a MBE Environmental *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____ _____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____       SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____       By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

Multiple claims. If a complaint asserts multiple claims which involve different subject matter divisions of the circuit court, the cover sheet for that division which is most definitive of the nature of the case should be selected and completed.

## COVER SHEET
## STATE OF ARKANSAS
## CIRCUIT COURT: CIVIL

> To Save a copy of this form to your computer, please click the disk icon on the toolbar above.

The civil reporting form and the information contained herein shall not be admissible as evidence in any court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8. Instructions are located on the back of the form.

### FILING INFORMATION

County: Union

District: _13_

Docket Number: CV-2013-006-6

Judge: Guthrie

Division: 6

Filing Date: 1/3/13

Plaintiff: Carla Gibson, et al.

Defendant: Clean Harbors El Dorado, LLC,

Attorney Providing Information: Robert L. Depper, Jr.

■ Plaintiff   □ Defendant   □ Intervenor

101 West Main St., Suite 200, El Dorado, AR 71730

Address

Litigant, if Pro Se: _____

Address

Related Case(s): Judge_____

Case Number(s) _____

### Type of Case:

**Torts**
- □ (NM) Negligence: Motor Vehicle
- ☒ (NO) Negligence: Other
- □ (BF) Bad Faith
- □ (FR) Fraud
- □ (MP) Malpractice
- □ (PL) Product Liability
- □ (OD) Other _____

**Contracts**
- □ (IS) Insurance
- □ (DO) Debt: Open Account
- □ (PN) Debt: Promissory Note
- □ (EM) Employment
- □ (OC) Other _____

**Equity**
- □ (FC) Foreclosure
- □ (QT) Quiet Title
- □ (IJ) Injunction
- □ (PT) Partition
- □ (OT) Other _____

**Miscellaneous**
- □ (CD) Condemnation
- □ (RE) Replevin
- □ (DJ) Declaratory Judgment
- □ (UD) Unlawful Detainer
- □ (IN) Incorporation
- □ (EL) Election
- □ (FJ) Foreign Judgment
- □ (WT) Writs_____
- □ (AA) Administrative Appeal
- □ (CF) Property Forfeiture
- □ (RD) Remove Disabilities
- □ (NC) Name Change
- □ (OM) Other _____

Jury Trial Requested: ☒ Yes □ No

**Manner of Filing:**
☒ Original □ Re-open □ Transfer
□ Return from Federal/Bankruptcy Court

### DISPOSITION INFORMATION

Disposition Date: _____

□ Bench Trial   □ Non-Trial   □ Jury Trial

**Judgment Type:**
- □ (DJ) Default Judgment
- □ (SJ) Summary Judgment
- □ (CJ) Consent Judgment
- □ (TJ) Trial Judgment
- □ (OJ) Other Judgment
- □ (PG) Petition Granted
- □ (PD) Petition Denied
- □ (DF) Decree of Foreclosure

**Dismissal Type:**
- □ (DW) Dismissed with Prejudice
- □ (DN) Dismissed without Prejudice

**Other:**
- □ (TR) Transferred to Another Jurisdiction
- □ (RB) Removed to Bankruptcy Court
- □ (RF) Removed to Federal Court
- □ (AR) Arbitration

**Judgment For:**
□ Plaintiff   □ Defendant   □ Both

Judgment Amount: $ _____

Clerk's Signature

Date

Send 1 paper or electronic copy to AOC upon filing.
Send 1 paper or electronic copy to AOC upon disposition.
Keep original in court file.

AOC 23  10-01
625 Marshall Street
Little Rock, AR 72201

**Effective 1-1-2002**

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated                                    PLAINTIFFS

VS.                                   NO. CV-2012- 0006-6

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL                               DEFENDANT

## CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, and for their cause of action against the defendant, Clean Harbors El Dorado LLC a/k/a

Ensco, a/k/a MSE Environmental, state and allege:

### INTRODUCTION

1.      This is a state law tort action in which plaintiffs and those similarly situated seek

to recover damages of less than $75,000 per individual plaintiff and per individual class member,

and less than $5,000,000 in the aggregate, inclusive of attorneys fees and costs, on theories of

negligence, absolute liability, and trespass for injuries to property and person proximately caused

by chemical releases including but not limited to sodium hypochlorite at the hazardous waste

storage and treatment facility of Clean Harbors El Dorado, LLC located in Union County,

Arkansas on or about December 18, 2012.

Page 1 of 13

FILED 3:45 PM
1/4/13
CHERYL COCHRAN - WILSON, CLERK
BY _____ D.C.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiffs are residents of Union County, Arkansas.

3.    Defendant, Clean Harbors El Dorado, LLC, is a foreign limited liability company with a principal place of business in Union County, Arkansas whose duly authorized agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

4.    This Court has subject matter jurisdiction over plaintiffs' claims because the amount in controversy exceeds the minimum jurisdictional limits of the Court. No plaintiff's or class member's individual claim is equal to or greater than seventy-five thousand dollars ($75,000) inclusive of costs and attorneys fees. Moreover, the total damages of the plaintiffs and the class, inclusive of costs and attorneys fees, do not exceed five million dollars ($5,000,000), and the plaintiffs and class stipulate that they will not seek to recover an amount in excess of that amount. As such, there is neither diversity nor Class Action Fairness Act jurisdiction for this claim in federal court. Pursuant to Ark. R. Civ. P. 8(a), this pleading demands unliquidated damages. Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court.

5.    These claims are tort actions by plaintiffs against defendant doing business within Union County, Arkansas, arising out of acts and omissions of said defendant occurring in Union County, Arkansas, which involve, *inter alia,* personal injuries to plaintiffs and damage to Union

County, Arkansas, real and personal property interests of plaintiffs. This Court has personal and subject matter jurisdiction and venue is proper.

6. Plaintiffs assert no claims involving either a federal question or statute, and plaintiffs' state law claims are not federally pre-empted. Plaintiffs' claims are maintained solely under the common law and laws of the State of Arkansas.

## FACTUAL ALLEGATIONS

7. Clean Harbors El Dorado, LLC, at all material times, operated a hazardous waste storage and treatment facility in Union County, Arkansas.

8. Clean Harbors El Dorado, LLC has operated its facility in a manner that has resulted in numerous fires and explosions and even more numerous releases of dangerous, toxic, and hazardous substances from its facility and the migration of those substances onto and into surrounding property and persons.

9. On the afternoon of December 18, 2012, there was a chemical release resulting from mishandling of chemicals and a possible fire and/or explosion involving chemicals including but not limited to sodium hypochlorite at Clean Harbors' hazardous waste storage and treatment facility in Union County, Arkansas. This resulted in the release and migration of toxic fumes and air pollution which caused great danger of death and injury to all persons and property near Clean Harbors' facility. These dangers in turn required the plaintiffs and others similarly situated to be evacuated under government supervision to places of safety from the places they were occupying at the time of the release. It is believed that as many as 400 or more may have been required to evacuate.

Page 3 of 13

10.     On information and belief, this event was, at least initially, proximately caused by Clean Harbors not properly managing chemical waste at its facility. Specifically, at approximately 4:00 p.m. on December 18, 2012, a trailer containing chlorinated swimming pool chemicals, specifically sodium hypochlorite, was reported to have had a chemical reaction which caused a large cloud of chlorinated pool chemicals to appear over the Clean Harbors plant in Union County, Arkansas. This cloud migrated to the northwest from the Clean Harbors facility and the eastern part of the City of El Dorado, Arkansas.

11.     Local authorities called for an evacuation of portions of the eastern part of the City of El Dorado, Arkansas.

12.     Certain persons exposed to the chemicals migrating from defendant's facility experienced symptoms of exposure including nose bleeds, coughing, difficulty breathing, dizziness, burning eyes, irritation of membranes and discomfort.

## CLASS ALLEGATIONS

13.     This is a class action brought by plaintiffs under Rule 23 of the Arkansas Rules of Civil Procedure on behalf of all persons in Union County, Arkansas, who suffered actual damages or injury as a result of the aforesaid fires and/or explosions and/or mishandling of chemicals to include but not limited to sodium hypochlorite at Clean Harbors' facility.

14.     The class represented by plaintiffs includes the following:

    a.     All adults who, on December 18, 2012 were required, by government order or direction to evacuate from their home or business due to the release at the defendant's facility;

    b.     All adults who on December 18, 2012, were in near proximity to defendant's facility and who were exposed to chemicals that originated

from the defendant's facility which resulted in discomfort including, without limitation, nose bleeds, shortness of breath, dizziness, irritation of membranes or other physical harm or discomfort as a result of exposure to defendant's chemicals;

c. All adults who on December 18, 2012, were in close proximity to the mandatory evacuation area, and who actually evacuated their home or business based on a reasonable belief that they were in imminent danger of death or serious injury if they failed to evacuate.

15. Excluded from the class are:

a. Minors;

b. Any person who claims to have suffered damages in excess of $75,000 as a result of the defendant's conduct on December 18, 2012;

c. Federal, state, and/or local governmental entities, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions;

d. Any entity in which defendant has a controlling interest, to include, but not limited to, their legal representatives, heirs and successors;

e. All persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years;

f. Incarcerated persons;

g. All persons employed by defendant; and

h. Any Judge in this lawsuit, persons within the third degree of consanguinity to such Judge, and employees of this Court.

16. The exact number of class members is unknown to plaintiffs at this time. On information and belief, plaintiffs state and allege that as many as 400 persons (and perhaps more) were involved in and subject to having been evacuated on December 18, 2012. Therefore, plaintiffs believe that the persons constituting the class are so numerous that it will be impractical to bring all members of the class before this Court individually.

17.     There exist questions of law and fact common to all members of the class. These
common questions of law and fact predominate over any individual questions affecting class
members. Common legal and factual questions include, but are not limited to, the following:

   a.   Whether the occurrence at defendant's facility on December 18, 2012, was
        the result of negligence on defendant's part;

   b.   Whether defendant is subject to absolute liability in tort for any damage
        resulting from its conduct on December 18, 2012.

   c.   Whether the migration of chemicals from defendant's facility on December
        18, 2012, resulted in a trespass to plaintiffs who owned property, resided in
        or were present in the area of this migration;

   d.   Whether the occurrence at defendant's facility on December 18, 2012,
        forced plaintiffs to evacuate or relocate;

   e.   Whether the migration of chemicals from defendant's facility on December
        18, 2012, resulted in economic damage to plaintiffs;

   f.   Whether the migration of chemicals from defendant's facility on December
        18, 2012, resulted in physical harm and associated medical expenses;

   g.   Whether the migration of chemicals from defendant's facility on December
        18, 2012, resulted in lost wages;

   h.   Whether the migration of chemicals from defendant's facility on December
        18, 2012, reasonably resulted in fear and fright to plaintiffs; and,

   i.   Whether the migration of chemicals from defendant's facility resulted in
        damage to real and personal property interests of plaintiffs.

18.     The claims of the representative plaintiffs are typical of the claims of the class in
that:

   a.   The representative plaintiffs and members of the class they seek to
        represent experienced the same impact from the defendant's conduct which
        resulted in the migration of chemicals from defendant's facility on
        December 18, 2012;

b.    The representative plaintiffs and the members of the class they seek to represent experienced the same types of damages proximately caused by defendant's conduct in causing the migration of chemicals from defendant's facility on December 18, 2012; and

c.    The factual bases and causes of action for the claims of the representative plaintiffs are common to all class members and arise out of a common course of conduct by defendant resulting in injury to all class members.

19.    Plaintiffs will fairly and adequately protect the interests of all members of the class they seek to represent, and have retained attorneys who are experienced in the prosecution of cases such as the present.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members is impracticable and this action will be manageable as a class action.

21.    Prosecution of individual actions would unduly increase the cost of litigation and cause delay, not only to plaintiffs and class members but to defendant and this Court.

22.    In contrast, a class action will avoid case management difficulties and provide multiple benefits to the parties including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each plaintiff and class member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

23.    Class treatment of the claims asserted by plaintiffs is superior to the other methods of adjudicating the claims of the class in that:

a.    The prosecution of separate actions by individual members of the class would create a foreseeable risk of inconsistent and varying adjudications

Page 7 of 13

which would establish incompatible results and standards of conduct for defendant;

b.    Adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interest of the other members not parties to the separate adjudication.

c.    Class action treatment avoids the waste and duplication inherent in numerous individual actions and conserves the resources of the Courts.

## FIRST CAUSE OF ACTION – NEGLIGENCE

24.    All allegations in paragraphs 1 through 23 are incorporated in this first cause of action.

25.    Defendant owes a duty to plaintiffs to use ordinary care and to not intentionally, negligently, and unlawfully generate, label, package, ship, handle, store, dispose of, manufacture, or release toxic, noxious, harmful, poisonous, hazardous, and dangerous substances into the air, so as to allow them to drift upon plaintiffs' property or come into contact with plaintiffs' persons. Defendant further owes plaintiffs a duty not to handle, store or dispose of such substances in a manner that results in those substances exploding, burning, or giving off poisonous gasses. Defendant further owes a duty to plaintiffs to properly operate and maintain its hazardous waste treatment and storage facility in such a manner that plaintiffs' property and persons are not contaminated by the discharge and migration of noxious, toxic, harmful, hazardous, and dangerous substances from the defendant's operations.

26.    Defendant failed to use ordinary care in the following respects:

a.    Failing to properly characterize, package, handle, ship, label and identify the nature and characteristics of the chemicals being shipped to the Clean Harbors facility in El Dorado, Arkansas;

b.   Failing to warn of, label, identify and separate incompatible wastes that are shipped to the Clean Harbors facility to prevent them from reacting, igniting and/or exploding and /or giving off noxious gasses;

c.   Improperly and negligently storing and handling hazardous material in a manner that resulted in that material reacting, exploding, burning and/or emitting noxious gasses on and after December 18, 2012.

d.   Generating, emitting, releasing, discharging and/or disposing of toxic, noxious, harmful, hazardous or dangerous substances and waste materials in a manner that it knew or should have known would contaminate and pollute the air, water and soil of surrounding areas, including property owned by plaintiffs;

e.   Improperly designing, constructing, and operating its hazardous waste storage and treatment facility in a manner it knew or should have known would cause noxious, toxic, harmful, hazardous or dangerous substances and wastes and adversely impact the plaintiffs;

f.   Failing to warn plaintiffs that it was generating, emitting, releasing, discharging, and/or disposing of noxious, toxic, harmful, hazardous or dangerous substances in a manner that it knew or should have known would adversely impact nearby residents and/or cause harm to plaintiffs and their property;

g.   Failing to timely, reasonably and adequately investigate the potential impact of generating, emitting, releasing discharging and/or disposing of noxious, toxic, harmful, hazardous or dangerous substances into the surrounding area, including plaintiffs' property;

h.   Failing to take measures to abate, remediate or remove the aforementioned noxious, toxic, harmful, hazardous, or dangerous substances from plaintiffs' property when defendant knew or should have known that the presence of such pollutants and contaminants would adversely affect the plaintiffs' property, and the health and welfare of plaintiffs and the general public; and

i.   Violating various state and federal regulations and laws concerning the generation, handling, emitting, releasing, discharging and/or disposal of noxious, toxic, harmful, hazardous, or dangerous substances, including an

air permit requirement prohibiting visual emissions beyond Clean Harbors' property line.

27.     As a result of defendant's failure to exercise ordinary care the plaintiffs were damaged as more fully set forth below.

## SECOND CAUSE OF ACTION – ABSOLUTE LIABILITY

28.     All allegations in paragraphs 1 through 23 above are incorporated in this second cause of action.

29.     Defendant's generating, packaging, labeling, shipping, storing, treating and disposing of hazardous wastes, and the operation of a hazardous waste storage and treatment facility where literally hundreds of thousands of tons of the most dangerous, hazardous, toxic and harmful substances known to man are stored, handled and treated constitutes an ultra-hazardous activity from which absolute liability may flow, rendering defendant absolutely liable to plaintiffs for injuries resulting from the explosion, burning, spilling, leaking, discharging, and release of toxic, dangerous, harmful and hazardous substances onto plaintiffs' property and persons.

## THIRD CAUSE OF ACTION – TRESPASS

30.     All allegations in paragraphs 1 through 23 above are incorporated in this third cause of action.

31.     Defendant, without plaintiffs' consent and without legal right, intentionally engaged in activities that resulted in noxious, toxic, harmful, hazardous, and dangerous substances entering upon plaintiffs' property. Such unauthorized invasions of plaintiffs' property interests by substances released by defendant constitute a trespass.

## DAMAGES

Page 10 of 13

32.     As a direct and proximate result of the aforesaid acts, omissions, and faults of defendant, plaintiffs have suffered substantial damages and injuries reasonably foreseeable to defendant as follows:

> a.     Costs and expenses associated with evacuation, without limitation, to meals, lodging and travel;
>
> b.     Costs and expenses associated with lost income;
>
> c.     Damage to plaintiffs' personal property and real property;
>
> d.     Personal injury in the form of discomfort including, without limitation, nose bleeds, shortness of breath, dizziness, irritation of membranes or other physical harm or discomfort as a result of exposure to defendant's chemicals, along with associated medical expenses;
>
> e.     The loss of use and enjoyment of plaintiffs' property;
>
> f.     The loss of peace of mind, fear and fright; and
>
> g.     Economic loss from business interruption.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, individually and as class representatives on behalf of all similarly situated persons and /or entities, pray the Court grant certification of this case as a class action pursuant to Ark. R. Civ. P. 23; appoint plaintiffs as class representatives and plaintiffs' counsel as class counsel; award appropriate monetary damages to plaintiffs and the proposed class in an amount sufficient to compensate them for all injuries and property damage suffered due to the acts and omissions of defendant which, when aggregated with all other elements of damages, costs and fees, will not exceed $75,000 per class member and/or $5,000,000 for the entire class; and award such additional relief in law or in equity as the Court determines fair,

reasonable and appropriate, which, collectively with all other elements of damages will not exceed $75,000 per class member and/or $5,000,000 for the entire class; and award any and all further relief to which plaintiffs and class members may prove themselves entitled to under Arkansas law.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Attorneys for Plaintiffs

By:

Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated                                    PLAINTIFFS

VS.                              NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL                                 DEFENDANT

## FIRST AMENDMENT TO CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, by and through their attorneys and do for the First Amendment to Class Action

Complaint state:

1. That on the 4th day of January, 2013, the plaintiffs herein filed a Class Action

Complaint.

2. That in the complaint, Clean Harbors El Dorado, LLC, a/k/a Ensco, a/k/a MSE

Environmental was named as defendant.

3. That since the filing of the suit, on information and belief, the plaintiffs herein would

assert that the proper defendant is not Clean Harbors El Dorado, LLC but is indeed an entity

known as Clean Harbors Environmental Services, Inc.

Page 1 of 4

4. That on information and belief, it is the understanding of the plaintiffs that Clean Harbors Environmental Services, Inc. is a Massachusetts corporation and is, therefore, a foreign corporation in the state of Arkansas and is registered to do business in the state of Arkansas. Its agent for service of process is The Corporation Company.

5. That due to the fact that it is the belief of the plaintiffs herein that Clean Harbors Environmental Services, Inc. is the proper defendant in this suit, it is the desire of the plaintiffs and the plaintiffs do by this First Amendment to Class Action Complaint, hereby substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental.

6. That by this pleading, the plaintiffs herein would substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental, and dismiss without prejudice, Clean Harbors El Dorado LLC.

7. That unless modified above, all allegations and assertions as set forth in the Class Action Complaint as filed on the 4th day of January, 2013, in the Circuit Court of Union County, Arkansas, Civil Division, bearing case no. CV-2013-0006-6, are hereby reaffirmed, realleged and reincorporated into this First Amendment of Class Action Complaint.

WHEREFORE, it is prayed that the Court consider, order, and adjudge that the defendant, Clean Harbors El Dorado, LLC, be dismissed without prejudice, and that as substitution for Clean Harbors El Dorado, LLC there be added as a defendant, Clean Harbors Environmental Services, Inc., a/k/a ENSCO, a/k/a MSE Environmental.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Attorneys for Plaintiffs

By:

Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE                                    PLAINTIFFS
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated

vs.                                    Case No. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC, a/k/a ENSCO                              DEFENDANTS
a/k/a MSE ENVIRONMENTAL and CLEAN HARBORS
ENVIRONMENTAL SERVICES, INC.

### ANSWER OF CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.

COMES defendant, Clean Harbors Environmental Services, Inc., and for its Answer to Plaintiffs'

First Amendment to Class Action Complaint, states:

1.      Defendant denies all allegations not specifically admitted herein.

2.      Defendant admits the allegations of paragraph 1 of plaintiffs' First Amendment to Class

Action Complaint.

3.      Defendant admits the allegations of paragraph 2 of plaintiffs' First Amendment to Class

Action Complaint.

4.      In response to paragraph 3 of plaintiffs' First Amendment to Class Action Complaint,

Defendant admits it operated the facility where an incident occurred on December 18, 2012. Defendant

denies that any act or omission on its part caused or contributed to the incident. Defendant denies any

remaining allegations in paragraph 3 of plaintiffs' First Amendment to Class Action Complaint.

5.      Defendant admits the allegations of paragraph 4 of plaintiffs' First Amendment to Class

Action Complaint.

6.      In response to paragraph 5 of plaintiffs' First Amendment to Class Action Complaint,

Defendant admits it operated the facility where an incident occurred on December 18, 2012. Defendant

denies that any act or omission on its part caused or contributed to the incident. Defendant denies any



remaining allegations in paragraph 5 of plaintiffs' First Amendment to Class Action Complaint.

7.      To the extent a response to allegations of paragraph 6 of plaintiffs' First Amendment to Class Action Complaint is required, defendant denies said allegations.

8.      In response to paragraph 7 of plaintiffs' First Amendment to Class Action Complaint, Defendant denies all allegations contained in plaintiffs' Class Action Complaint not specifically admitted herein.   Defendant otherwise denies the allegations contained in paragraph 7 of plaintiffs' First Amendment to Class Action Complaint.

9.      Defendant does not have sufficient information to admit or deny the allegations of paragraph 1 of plaintiffs' Class Action Complaint, therefore it denies said allegations.

10.     Defendant does not have sufficient information to admit or deny the allegations of paragraph 2 of plaintiffs' Class Action Complaint, therefore it denies said allegations.

11.     Paragraph 3 of plaintiffs' Class Action Complaint is not directed toward this defendant. Defendant, therefore, denies the allegations contained in paragraph 3 of plaintiffs' Class Action Complaint.

12.     Defendant denies the allegations of paragraph 4 of plaintiffs' Class Action Complaint.

13.     Defendant does not have sufficient information to admit or deny the allegations of paragraph 5 of plaintiffs' Class Action Complaint, therefore it denies said allegations.

14.     Defendant does not have sufficient information to admit or deny the allegations of paragraph 6 of plaintiffs' Class Action Complaint, therefore it denies said allegations.

15.     Defendant admits the allegations of paragraph 7 of plaintiffs' Class Action Complaint.

16.     Defendant denies the allegations of paragraph 8 of plaintiffs' Class Action Complaint.

17.     Defendant admits that an incident occurred at its facility on December 18, 2012, but denies the balance of the allegations of paragraph 9 of plaintiffs' Class Action Complaint.

18.     Defendant admits that an incident occurred at its facility on December 18, 2012, but denies the balance of the allegations of paragraph 10 of plaintiffs' Class Action Complaint.

2

41.    To the extent a response to allegations of the Prayer for Relief is required, defendant denies said allegations.

42.    Defendant alleges that it is entitled to all defenses available to it under the provisions of Rule 12(b) of the Arkansas Rules of Civil Procedure to-wit:

    (1)    lack of jurisdiction over the subject matter,
    (2)    lack of jurisdiction over the person,
    (3)    improper venue,
    (4)    failure to state facts upon which relief can be granted, and
    (5)    failure to join a party under Rule 19

43.    Defendant alleges that it is entitled to all defenses available to it under the provisions of Rule 8(c) of the Arkansas Rules of Civil Procedure to-wit:

    (1)    accord and satisfaction;
    (2)    arbitration and award;
    (3)    discharge in bankruptcy;
    (4)    estoppel;
    (5)    fraud;
    (6)    illegality;
    (7)    laches;
    (8)    res judicata;
    (9)    set-off; and
    (10)   waiver.

44.    Defendant states that plaintiffs' damages, if any, were solely and proximately caused by the negligence or fault of plaintiffs or other parties, persons or entities for whose negligence or fault defendant is not legally liable or responsible. Defendant affirmatively invokes the law of comparative fault both as a bar to plaintiffs' recovery and in diminution of plaintiffs' damages, if any.

45.    Defendant affirmatively pleads that plaintiffs have acted in bad faith in attempting to preclude federal jurisdiction by pleading an amount in controversy less than required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

46.    Defendant affirmatively pleads that plaintiffs are judicially estopped from amending their Class Action Complaint to seek damages in excess of the minimum requirements for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

47.     Defendant affirmatively pleads plaintiffs are bound by the prayer for relief in which plaintiffs limit the amount in controversy to seek damages in an amount less than required for diversity jurisdiction pursuant to 28 U.S.C. § 1332 as set forth in § 16-63-221 of the Arkansas Code.

48.     Defendant affirmatively pleads that plaintiffs have failed to state a case against it upon which relief can be granted pursuant to Rule 12(b) of the Arkansas Rules of Civil Procedure.

49.     Defendant affirmatively pleads that plaintiffs' class claims should fail pursuant to Rule 23(a) of the Arkansas Rules of Civil Procedure. Plaintiffs' Class Action Complaint fails to satisfy the requirements of numerosity (Rule 23(a)(1)), typicality (Rule 23(a)(2)), and commonality (Rules 23(a)(3)). Moreover, the plaintiffs and their counsel will not fairly and adequately protect the interest of the purported class (Rule 23(a)(4)).

50.     Defendant affirmatively pleads that plaintiffs' class claims should fail pursuant to Rule 23(b) of the Arkansas Rules of Civil Procedure. The allegations in plaintiffs' Class Action Complaint evidence that individual issues predominate over any alleged questions of law or fact common to the purported class. Moreover, given the allegations of the Class Action Complaint, a class action is not the superior method for the fair and efficient adjudication of the controversy.

51.     This Answer is being filed without the benefit of discovery, and defendant therefore reserves the right to plead further upon discovery of additional information.

52.     Although plaintiffs do not make such a request, defendant requests a trial by jury on any remaining genuine issues of material fact.

WHEREFORE, having fully answered, defendant, Clean Harbors Environmental Services, Inc., prays the Class Action Complaint and First Amendment to Class Action Complaint of plaintiffs be dismissed, for its costs incurred and expended herein and for any and all other just and proper relief to which it may be entitled.

Respectfully submitted,

BARBER, MCCASKILL, JONES & HALE, P.A.
2700 Regions Center
400 W. Capitol Avenue
Little Rock, AR 72201
501-372-6175

By: _____

John S. Cherry, Jr. #66012
Rick Behring Jr. #07167
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby state that I have served a copy of the above pleading to the following on the ___6___ day of February, 2013, via email and U.S. Mail.

Robert L. Depper Jr., Esq.
Depper Law Firm
101 W. Main, Suite 200
El Dorado, AR 71730
Attorney for Plaintiffs

Allen P. Roberts, Esq.
Allen P. Roberts, P.A.
P.O. Box 280
Camden, AR 71711-0280
Attorney for Plaintiffs

Dale Smart, Esq.
Phillip A. Stone, Esq.
Smart & Stone
315 E. Main
El Dorado, AR 71730
Attorneys for Plaintiffs

Samuel E. Ledbetter, Esq.
McMath Woods, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Attorney for Plaintiffs

David P. Price, Esq.
David P. Price, P.A.
P.O. Box 765
Magnolia, AR 71754-0765
Attorney for Plaintiffs

John S. Cherry, Jr.
Rick Behring Jr.

6

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves                    PLAINTIFFS
And all other similarly situated

VS.                          CASE NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC, a/k/a
ENSCO, a/k/a MSE ENVIRONMENTAL                          DEFENDANT/
CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.        THIRD PARTY PLAINTIFF

VS.

BIOLAB, INC. a/ka/a BIO-LAB, INC.                    THIRD PARTY DEFENDANT
a/k/a Bio Lab, Inc.

## SUMMONS
(Notice of Lawsuit)

# THE STATE OF ARKANSAS TO THIRD PARTY DEFENDANT:

BioLab, Inc. a/k/a Bio-Lab, Inc., a/k/a Bio Lab, Inc.
Registed Agent for Service
The Corporation Company
40 Technology Parkway South, Suit e#300
Norcross, GA 30092

# TO THE ABOVE-NAMED THIRD PARTY DEFENDANT(S):

1.      You are hereby notified that a lawsuit has been filed against you by the above named
plaintiff(s); the relief asked is stated in the attached Third Party Complaint.

2.      The attached Third Party Complaint will be considered admitted by you and a judgment
by default may be entered against you for the relief asked in the Third Party Complaint unless
you file a written response or answer and thereafter appear and present your defense.  Your
pleading or answer must meet the following requirements:

A.      It must be in writing and otherwise comply with the Arkansas Rules of Civil Procedure.

B.     It must be filed with the clerk of this court within thirty (30) days from the day you were served with this Summons and Third Party Complaint.

C.     The answer or motion must also be served on the third party plaintiff or third party plaintiff's attorney. A copy may be served upon third party plaintiff's attorney at:

    John S. Cherry, Jr./Rick A. Behring Jr.
    Barber, McCaskill, Jones & Hale, P.A.
    400 West Capitol Avenue, Ste. 2700
    Little Rock, AR 72201-3414

D.     If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the Third Party Complaint.

CLERK OF COURT

Address of Clerk's Office

_____

[Signature of Clerk or Deputy Clerk]

Date: 2/8/2013

[SEAL]

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____ [place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode
at _____ [address] with _____ [name],
a person at least 14 years of age who resides there, on _____ [date]; or

☐ I delivered the summons and complaint to _____ [name of individual],
An agent authorized by appointment or by law to receive service of summons on behalf of
_____ [name of defendant] on _____ [date]; or

☐ I and the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the
summons and complaint on the defendant by certified mail, return receipt requested, restricted
delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy
of the summons and complaint by first-class mail to the defendant together with two copies of a
notice and acknowledgement and received the attached notice and acknowledgment form within
twenty days after the date of mailing.

☐ Other [ specify]:_____

☐ I was unable to execute service because:_____

_____

My fee is $_____.

To be completed if service is by a sheriff or deputy sheriff:

Date:_____        SHERIFF OF _____ COUNTY, ARKANSAS

                         By:_____
                         [Signature of server]

                         _____
                         [Printed name, title, and badge number]

To be completed if service is by a person other than a sheriff or deputy sheriff:

Date:_____        SHERIFF OF _____ COUNTY, ARKANSAS

                         By:_____
                         [Signature of server]

                         _____
                         [Printed name, title, and badge number]

Address:_____

_____

Phone:   _____

Subscribed and sworn to before me this date:_____

_____
Notary Public

My commission expires:_____

Additional information regarding service or attempted service:

_____

_____

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
And all other similarly situated                                                PLAINTIFFS

VS.                                    CASE NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC, a/k/a
ENSCO, a/k/a MSE ENVIRONMENTAL
CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.                        DEFENDANT/
                                                                  THIRD PARTY PLAINTIFF
VS.

BIOLAB, INC. a/ka/a BIO-LAB, INC.
a/k/a BIO LAB, INC.                                    THIRD PARTY DEFENDANT

## THIRD PARTY COMPLAINT

Comes separate defendant, Clean Harbors Environmental Services, Inc. (hereinafter "CHESI"),

and for its Third Party Complaint, states:

1.    CHESI is a foreign corporation doing business in the State of Arkansas.

2.    BioLab, Inc. a/ka/ Bio-Lab, Inc. a/k/a Bio Lab, Inc. (hereinafter "BioLab"), is a Delaware

corporation doing business in the State of Arkansas. BioLab may be served through its registered agent,

The Corporation Company, 40 Technology Parkway South, Suite #300, Norcross, GA, 30092.

3.    This Court has subject matter and personal jurisdiction. Venue is proper with this Court.

4.    On or about January 4, 2013, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers,

Lee Warden, Kathy Wood, and Lillie Woods (hereinafter "Plaintiffs") filed their Class Action Complaint

against Clean Harbors El Dorado, LLC a/k/a ENSCO a/k/a MSE Environmental. A copy of the Class

Action Complaint is attached hereto as Exhibit "A".

5.    On or about February 4, 2013, Plaintiffs amended their Class Action Complaint to name

CHESI as a defendant. A copy of the Amended Class Action Complaint is attached hereto as

Exhibit "B".

6.    While continuing to deny liability to plaintiffs or any of them for the incident of

FILED

2/8/2013          4:22PM
C..... COCHRAN - WILSON, CLERK

December 18, 2012, CHESI alleges that in the event it is liable to plaintiffs under any theory of liability, CHESI is entitled to recover from and be indemnified by BioLab for any and all amounts which might be adjudicated in favor of plaintiffs against CHESI.

8. BioLab was guilty of negligence or fault in that it failed to properly prepare the shipment of CNT Hazardous Waste Solids in a proper fashion and in accordance with the Waste Material Profile Sheet provided by BioLab. Moreover, BioLab failed to warn CHESI of the propensity for these waste solids to react despite pre-existing knowledge. BioLab's failure to properly prepare, package, warn and safeguard the shipment was a proximate cause of the incident of December 18, 2012, which occurred at CHESI's facility in El Dorado, Arkansas.

10. While continuing to deny liability to plaintiffs, CHESI adopts and incorporates the allegations of the Class Action Complaint and First Amendment to Class Action Complaint, which allegations are reasserted in their entirety against the third-party defendant.

11. In the event of an adverse judgment or verdict against it in this case, CHESI alleges that it is entitled to contribution, comparison of fault and/or indemnity from BioLab.

12. CHESI requests a trial by jury.

Wherefore, CHESI prays that in the event of an adverse judgment by plaintiffs against it, that it have judgment against third-party defendant, BioLab, for any and all amounts which may be adjudicated against it, together with costs, attorneys' fees and all other appropriate relief to which it may be entitled.

Respectfully submitted,

BARBER, MCCASKILL, JONES & HALE, P.A.
400 W. Capitol Avenue, Suite 2700
Little Rock, AR 72201
501-372-6175

By: _____

John S. Cherry, Jr. #66012
Rick Behring Jr. #07167
ATTORNEYS FOR DEFENDANT/THIRD-PARTY
PLAINTIFF

2

03/12/2013 TUE 14:08   FAX 8709641994 Union Cnty Circut Clerk                                    ⓸004/039

## CERTIFICATE OF SERVICE

I hereby state that I have served a copy of the above pleading to the following on the ⁄ day of February, 2013, via email and U.S. Mail.

Robert L. Depper Jr., Esq.
Depper Law Firm
101 W. Main, Suite 200
El Dorado, AR  71730
Attorney for Plaintiffs

Samuel E. Ledbetter, Esq.
McMath Woods, P.A.
711 West Third Street
Little Rock, AR  72201-2201
Attorney for Plaintiffs

Allen P. Roberts, Esq.
Allen P. Roberts, P.A.
P.O. Box 280
Camden, AR  71711-0280
Attorney for Plaintiffs

David P. Price, Esq.
David P. Price, P.A.
P.O. Box 765
Magnolia, AR  71754-0765
Attorney for Plaintiffs

Dale Smart, Esq.
Phillip A. Stone, Esq.
Smart & Stone
315 E. Main
El Dorado, AR  71730
Attorneys for Plaintiffs

John S. Cherry, Jr.
Rick Behring Jr.

3



EXHIBIT
A

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated                                    PLAINTIFFS

VS.                              NO. CV-2012-_0006-6_

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL                                 DEFENDANT

## CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, and for their cause of action against the defendant, Clean Harbors El Dorado LLC a/k/a

Ensco, a/k/a MSE Environmental, state and allege:

### INTRODUCTION

1.      This is a state law tort action in which plaintiffs and those similarly situated seek

to recover damages of less than $75,000 per individual plaintiff and per individual class member,

and less than $5,000,000 in the aggregate, inclusive of attorneys fees and costs, on theories of

negligence, absolute liability, and trespass for injuries to property and person proximately caused

by chemical releases including but not limited to sodium hypochlorite at the hazardous waste

storage and treatment facility of Clean Harbors El Dorado, LLC located in Union County,

Arkansas on or about December 18, 2012.

Page 1 of 13

FILED
1/4/13 @ 3:45 PM
CHERYL COCHRAN - WILSON, CLERK
BY _____ D C.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiffs are residents of Union County, Arkansas.

3.    Defendant, Clean Harbors El Dorado, LLC, is a foreign limited liability company with a principal place of business in Union County, Arkansas whose duly authorized agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

4.    This Court has subject matter jurisdiction over plaintiffs' claims because the amount in controversy exceeds the minimum jurisdictional limits of the Court. No plaintiff's or class member's individual claim is equal to or greater than seventy-five thousand dollars ($75,000) inclusive of costs and attorneys fees. Moreover, the total damages of the plaintiffs and the class, inclusive of costs and attorneys fees, do not exceed five million dollars ($5,000,000), and the plaintiffs and class stipulate that they will not seek to recover an amount in excess of that amount. As such, there is neither diversity nor Class Action Fairness Act jurisdiction for this claim in federal court. Pursuant to Ark. R. Civ. P. 8(a), this pleading demands unliquidated damages. Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court.

5.    These claims are tort actions by plaintiffs against defendant doing business within Union County, Arkansas, arising out of acts and omissions of said defendant occurring in Union County, Arkansas, which involve, *inter alia,* personal injuries to plaintiffs and damage to Union

County, Arkansas, real and personal property interests of plaintiffs. This Court has personal and subject matter jurisdiction and venue is proper.

6.      Plaintiffs assert no claims involving either a federal question or statute, and plaintiffs' state law claims are not federally pre-empted. Plaintiffs' claims are maintained solely under the common law and laws of the State of Arkansas.

### FACTUAL ALLEGATIONS

7.      Clean Harbors El Dorado, LLC, at all material times, operated a hazardous waste storage and treatment facility in Union County, Arkansas.

8.      Clean Harbors El Dorado, LLC has operated its facility in a manner that has resulted in numerous fires and explosions and even more numerous releases of dangerous, toxic, and hazardous substances from its facility and the migration of those substances onto and into surrounding property and persons.

9.      On the afternoon of December 18, 2012, there was a chemical release resulting from mishandling of chemicals and a possible fire and/or explosion involving chemicals including but not limited to sodium hypochlorite at Clean Harbors' hazardous waste storage and treatment facility in Union County, Arkansas. This resulted in the release and migration of toxic fumes and air pollution which caused great danger of death and injury to all persons and property near Clean Harbors' facility. These dangers in turn required the plaintiffs and others similarly situated to be evacuated under government supervision to places of safety from the places they were occupying at the time of the release. It is believed that as many as 400 or more may have been required to evacuate.

10. On information and belief, this event was, at least initially, proximately caused by Clean Harbors not properly managing chemical waste at its facility. Specifically, at approximately 4:00 p.m. on December 18, 2012, a trailer containing chlorinated swimming pool chemicals, specifically sodium hypochlorite, was reported to have had a chemical reaction which caused a large cloud of chlorinated pool chemicals to appear over the Clean Harbors plant in Union County, Arkansas. This cloud migrated to the northwest from the Clean Harbors facility and the eastern part of the City of El Dorado, Arkansas.

11. Local authorities called for an evacuation of portions of the eastern part of the City of El Dorado, Arkansas.

12. Certain persons exposed to the chemicals migrating from defendant's facility experienced symptoms of exposure including nose bleeds, coughing, difficulty breathing, dizziness, burning eyes, irritation of membranes and discomfort.

## CLASS ALLEGATIONS

13. This is a class action brought by plaintiffs under Rule 23 of the Arkansas Rules of Civil Procedure on behalf of all persons in Union County, Arkansas, who suffered actual damages or injury as a result of the aforesaid fires and/or explosions and/or mishandling of chemicals to include but not limited to sodium hypochlorite at Clean Harbors' facility.

14. The class represented by plaintiffs includes the following:

   a. All adults who, on December 18, 2012 were required, by government order or direction to evacuate from their home or business due to the release at the defendant's facility;

   b. All adults who on December 18, 2012, were in near proximity to defendant's facility and who were exposed to chemicals that originated

Page 4 of 13

from the defendant's facility which resulted in discomfort including, without limitation, nose bleeds, shortness of breath, dizziness, irritation of membranes or other physical harm or discomfort as a result of exposure to defendant's chemicals;

    c.    All adults who on December 18, 2012, were in close proximity to the mandatory evacuation area, and who actually evacuated their home or business based on a reasonable belief that they were in imminent danger of death or serious injury if they failed to evacuate.

15.    Excluded from the class are:

    a.    Minors;

    b.    Any person who claims to have suffered damages in excess of $75,000 as a result of the defendant's conduct on December 18, 2012;

    c.    Federal, state, and/or local governmental entities, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions;

    d.    Any entity in which defendant has a controlling interest, to include, but not limited to, their legal representatives, heirs and successors;

    e.    All persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years;

    f.    Incarcerated persons;

    g.    All persons employed by defendant; and

    h.    Any Judge in this lawsuit, persons within the third degree of consanguinity to such Judge, and employees of this Court.

16.    The exact number of class members is unknown to plaintiffs at this time. On information and belief, plaintiffs state and allege that as many as 400 persons (and perhaps more) were involved in and subject to having been evacuated on December 18, 2012. Therefore, plaintiffs believe that the persons constituting the class are so numerous that it will be impractical to bring all members of the class before this Court individually.

17.     There exist questions of law and fact common to all members of the class. These

common questions of law and fact predominate over any individual questions affecting class

members. Common legal and factual questions include, but are not limited to, the following:

    a.    Whether the occurrence at defendant's facility on December 18, 2012, was the result of negligence on defendant's part;

    b.    Whether defendant is subject to absolute liability in tort for any damage resulting from its conduct on December 18, 2012.

    c.    Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in a trespass to plaintiffs who owned property, resided in or were present in the area of this migration;

    d.    Whether the occurrence at defendant's facility on December 18, 2012, forced plaintiffs to evacuate or relocate;

    e.    Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in economic damage to plaintiffs;

    f.    Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in physical harm and associated medical expenses;

    g.    Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in lost wages;

    h.    Whether the migration of chemicals from defendant's facility on December 18, 2012, reasonably resulted in fear and fright to plaintiffs; and,

    i.    Whether the migration of chemicals from defendant's facility resulted in damage to real and personal property interests of plaintiffs.

18.     The claims of the representative plaintiffs are typical of the claims of the class in

that:

    a.    The representative plaintiffs and members of the class they seek to represent experienced the same impact from the defendant's conduct which resulted in the migration of chemicals from defendant's facility on December 18, 2012;

 

 

    b.    The representative plaintiffs and the members of the class they seek to
represent experienced the same types of damages proximately caused by
defendant's conduct in causing the migration of chemicals from
defendant's facility on December 18, 2012; and

    c.    The factual bases and causes of action for the claims of the representative
plaintiffs are common to all class members and arise out of a common
course of conduct by defendant resulting in injury to all class members.

19.    Plaintiffs will fairly and adequately protect the interests of all members of the

class they seek to represent, and have retained attorneys who are experienced in the prosecution

of cases such as the present.

20.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joining all members is impracticable and this action will be

manageable as a class action.

21.    Prosecution of individual actions would unduly increase the cost of litigation and

cause delay, not only to plaintiffs and class members but to defendant and this Court.

22.    In contrast, a class action will avoid case management difficulties and provide

multiple benefits to the parties including efficiency, economy of scale, unitary adjudication with

consistent results and equal protection of the rights of each plaintiff and class member. These

benefits would result from the comprehensive and efficient supervision of the litigation by a

single court.

23.    Class treatment of the claims asserted by plaintiffs is superior to the other

methods of adjudicating the claims of the class in that:

    a.    The prosecution of separate actions by individual members of the class
would create a foreseeable risk of inconsistent and varying adjudications

which would establish incompatible results and standards of conduct for defendant;

b.   Adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interest of the other members not parties to the separate adjudication.

c.   Class action treatment avoids the waste and duplication inherent in numerous individual actions and conserves the resources of the Courts.

## FIRST CAUSE OF ACTION – NEGLIGENCE

24.   All allegations in paragraphs 1 through 23 are incorporated in this first cause of action.

25.   Defendant owes a duty to plaintiffs to use ordinary care and to not intentionally, negligently, and unlawfully generate, label, package, ship, handle, store, dispose of, manufacture, or release toxic, noxious, harmful, poisonous, hazardous, and dangerous substances into the air, so as to allow them to drift upon plaintiffs' property or come into contact with plaintiffs' persons. Defendant further owes plaintiffs a duty not to handle, store or dispose of such substances in a manner that results in those substances exploding, burning, or giving off poisonous gasses. Defendant further owes a duty to plaintiffs to properly operate and maintain its hazardous waste treatment and storage facility in such a manner that plaintiffs' property and persons are not contaminated by the discharge and migration of noxious, toxic, harmful, hazardous, and dangerous substances from the defendant's operations.

26.   Defendant failed to use ordinary care in the following respects:

a.   Failing to properly characterize, package, handle, ship, label and identify the nature and characteristics of the chemicals being shipped to the Clean Harbors facility in El Dorado, Arkansas;

Page 8 of 13

b.   Failing to warn of, label, identify and separate incompatible wastes that are shipped to the Clean Harbors facility to prevent them from reacting, igniting and/or exploding and /or giving off noxious gasses;

c.   Improperly and negligently storing and handling hazardous material in a manner that resulted in that material reacting, exploding, burning and/or emitting noxious gasses on and after December 18, 2012.

d.   Generating, emitting, releasing, discharging and/or disposing of toxic, noxious, harmful, hazardous or dangerous substances and waste materials in a manner that it knew or should have known would contaminate and pollute the air, water and soil of surrounding areas, including property owned by plaintiffs;

e.   Improperly designing, constructing, and operating its hazardous waste storage and treatment facility in a manner it knew or should have known would cause noxious, toxic, harmful, hazardous or dangerous substances and wastes and adversely impact the plaintiffs;

f.   Failing to warn plaintiffs that it was generating, emitting, releasing, discharging, and/or disposing of noxious, toxic, harmful, hazardous or dangerous substances in a manner that it knew or should have known would adversely impact nearby residents and/or cause harm to plaintiffs and their property;

g.   Failing to timely, reasonably and adequately investigate the potential impact of generating, emitting, releasing discharging and/or disposing of noxious, toxic, harmful, hazardous or dangerous substances into the surrounding area, including plaintiffs' property;

h.   Failing to take measures to abate, remediate or remove the aforementioned noxious, toxic, harmful, hazardous, or dangerous substances from plaintiffs' property when defendant knew or should have known that the presence of such pollutants and contaminants would adversely affect the plaintiffs' property, and the health and welfare of plaintiffs and the general public; and

i.   Violating various state and federal regulations and laws concerning the generation, handling, emitting, releasing, discharging and/or disposal of noxious, toxic, harmful, hazardous, or dangerous substances, including an

air permit requirement prohibiting visual emissions beyond Clean Harbors' property line.

27.    As a result of defendant's failure to exercise ordinary care the plaintiffs were damaged as more fully set forth below.

## SECOND CAUSE OF ACTION – ABSOLUTE LIABILITY

28.    All allegations in paragraphs 1 through 23 above are incorporated in this second cause of action.

29.    Defendant's generating, packaging, labeling, shipping, storing, treating and disposing of hazardous wastes, and the operation of a hazardous waste storage and treatment facility where literally hundreds of thousands of tons of the most dangerous, hazardous, toxic and harmful substances known to man are stored, handled and treated constitutes an ultra-hazardous activity from which absolute liability may flow, rendering defendant absolutely liable to plaintiffs for injuries resulting from the explosion, burning, spilling, leaking, discharging, and release of toxic, dangerous, harmful and hazardous substances onto plaintiffs' property and persons.

## THIRD CAUSE OF ACTION – TRESPASS

30.    All allegations in paragraphs 1 through 23 above are incorporated in this third cause of action.

31.    Defendant, without plaintiffs' consent and without legal right, intentionally engaged in activities that resulted in noxious, toxic, harmful, hazardous, and dangerous substances entering upon plaintiffs' property. Such unauthorized invasions of plaintiffs' property interests by substances released by defendant constitute a trespass.

## DAMAGES

Page 10 of 13

32.     As a direct and proximate result of the aforesaid acts, omissions, and faults of defendant, plaintiffs have suffered substantial damages and injuries reasonably foreseeable to defendant as follows:

    a.  Costs and expenses associated with evacuation, without limitation, to meals, lodging and travel;

    b.  Costs and expenses associated with lost income;

    c.  Damage to plaintiffs' personal property and real property;

    d.  Personal injury in the form of discomfort including, without limitation, nose bleeds, shortness of breath, dizziness, irritation of membranes or other physical harm or discomfort as a result of exposure to defendant's chemicals, along with associated medical expenses;

    e.  The loss of use and enjoyment of plaintiffs' property;

    f.  The loss of peace of mind, fear and fright; and

    g.  Economic loss from business interruption.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, individually and as class representatives on behalf of all similarly situated persons and /or entities, pray the Court grant certification of this case as a class action pursuant to Ark. R. Civ. P. 23; appoint plaintiffs as class representatives and plaintiffs' counsel as class counsel; award appropriate monetary damages to plaintiffs and the proposed class in an amount sufficient to compensate them for all injuries and property damage suffered due to the acts and omissions of defendant which, when aggregated with all other elements of damages, costs and fees, will not exceed $75,000 per class member and/or $5,000,000 for the entire class; and award such additional relief in law or in equity as the Court determines fair,

reasonable and appropriate, which, collectively with all other elements of damages will not

exceed $75,000 per class member and/or $5,000,000 for the entire class; and award any and all

further relief to which plaintiffs and class members may prove themselves entitled to under

Arkansas law.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Attorneys for Plaintiffs

BY: _____
Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs

03/12/2013 TUE 14:10 FAX 8708641994 Union Cnty Circut Clerk @022/039



IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated                          PLAINTIFFS

VS.                          NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL                 DEFENDANT

## FIRST AMENDMENT TO CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, by and through their attorneys and do for the First Amendment to Class Action

Complaint state:

1. That on the 4th day of January, 2013, the plaintiffs herein filed a Class Action

Complaint.

2. That in the complaint, Clean Harbors El Dorado, LLC, a/k/a Ensco, a/k/a MSE

Environmental was named as defendant.

3. That since the filing of the suit, on information and belief, the plaintiffs herein would

assert that the proper defendant is not Clean Harbors El Dorado, LLC but is indeed an entity

known as Clean Harbors Environmental Services, Inc.

Page 1 of 4



4. That on information and belief, it is the understanding of the plaintiffs that Clean Harbors Environmental Services, Inc. is a Massachusetts corporation and is, therefore, a foreign corporation in the state of Arkansas and is registered to do business in the state of Arkansas. Its agent for service of process is The Corporation Company.

5. That due to the fact that it is the belief of the plaintiffs herein that Clean Harbors Environmental Services, Inc. is the proper defendant in this suit, it is the desire of the plaintiffs and the plaintiffs do by this First Amendment to Class Action Complaint, hereby substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental.

6. That by this pleading, the plaintiffs herein would substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental, and dismiss without prejudice, Clean Harbors El Dorado LLC.

7. That unless modified above, all allegations and assertions as set forth in the Class Action Complaint as filed on the 4th day of January, 2013, in the Circuit Court of Union County, Arkansas, Civil Division, bearing case no. CV-2013-0006-6, are hereby reaffirmed, realleged and reincorporated into this First Amendment of Class Action Complaint.

WHEREFORE, it is prayed that the Court consider, order, and adjudge that the defendant, Clean Harbors El Dorado, LLC, be dismissed without prejudice, and that as substitution for Clean Harbors El Dorado, LLC there be added as a defendant, Clean Harbors Environmental Services, Inc., a/k/a ENSCO, a/k/a MSE Environmental.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Page 3 of 4

Attorneys for Plaintiffs

By: _____

Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves                    PLAINTIFFS
And all other similarly situated

VS.                                    CASE NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC, a/k/a
ENSCO, a/k/a MSE ENVIRONMENTAL                                    DEFENDANT/
CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.              THIRD PARTY PLAINTIFF

VS.

BIOLAB, INC. a/ka/a BIO-LAB, INC.                        THIRD PARTY DEFENDANT
a/k/a BIO LAB, INC.

### AMENDED AND SUBSTITUTED
### THIRD PARTY COMPLAINT

Comes separate defendant, Clean Harbors Environmental Services, Inc. (hereinafter "CHESI"),

and for its Amended and Substituted Third Party Complaint, states:

1.     CHESI is a foreign corporation doing business in the State of Arkansas.

2.     BioLab, Inc. a/ka/ Bio-Lab, Inc. a/k/a Bio Lab, Inc. (hereinafter "BioLab"), is a Delaware

corporation doing business in the State of Arkansas. BioLab may be served through its registered agent,

The Corporation Company, 40 Technology Parkway South, Suite #300, Norcross, GA, 30092.

3.     This Court has subject matter and personal jurisdiction. Venue is proper with this Court.

4.     On or about January 4, 2013, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers,

Lee Warden, Kathy Wood, and Lillie Woods (hereinafter "Plaintiffs") filed their Class Action Complaint

against Clean Harbors El Dorado, LLC a/k/a ENSCO a/k/a MSE Environmental. A copy of the Class

Action Complaint is attached hereto as Exhibit "A".

5.     On or about February 4, 2013, Plaintiffs amended their Class Action Complaint to name

CHESI as a defendant. A copy of the Amended Class Action Complaint is attached hereto as

Exhibit "B".

6.     While continuing to deny liability to plaintiffs or any of them for the incident of

**FILED**
2-12-2013 @ 11:44am
CHERYL COCHRAN - WILSON, CLERK
BY _____ D.C.

December 18, 2012, CHESI alleges that in the event it is liable to plaintiffs under any theory of liability,

CHESI is entitled to recover from and be indemnified by BioLab for any and all losses incurred by CHESI

as a result of the incident or which might be adjudicated in favor of plaintiffs against CHESI.

7.  BioLab is a wholly owned subsidiary of Chemtura Corporation.  Chemtura Corporation

formed following the merger of Great Lakes Chemical Corporation and Crompton Corporation.

8.  CHESI entered into the Crompton Corporation Master Waste Management Services

Agreement (hereinafter "MSA") on or about April 18, 2001.  A copy of the MSA is attached hereto as

Exhibit "C".

9.  BioLab and CHESI agreed to and adopted the terms of the MSA.  The terms of the MSA

applied to the waste material involved in the incident giving rise to the Class Action Complaint.

10.  BioLab represented and warranted, in part:

(a)  Company represents and warrants to Contractor that:

(i)  Waste Materials tendered to Contractor will conform in all
material respects to the descriptions and specifications contained in the applicable Waster
Material Profile Sheets.

(Exh. C, ¶6).

11.  BioLab further agreed to the following indemnity agreement:

(b)  Company agrees to indemnify, defend and save harmless Contractor, its Affiliates
and any approved subcontractors from and against any and all Losses to the extent caused
by:

(i)  any breach by Company of any of the representations, warranties or
covenants of Company set forth in this Agreement; or

(Exh. C, ¶11).

12.  CHESI provided notice of its intent to exercise its rights under the MSA to BioLab and

otherwise complied with all conditions precedent to the MSA.

13.  With respect to the waste material involved in the incident giving rise to the Class Action

Complaint, BioLab provided a Waste Material Profile Sheet (hereinafter "Profile Sheet").  A copy of the

2

Profile Sheet is attached as Exhibit "D".

14. As reflected in the Profile Sheet, BioLab provided a negative response to the following question: "Does this waste have any undisclosed hazards or prior incidents associated with it, which could affect the way it should be handled?"

15. Despite BioLab's response, BioLab had knowledge of prior incidents in which this waste would react in the same manner as it reacted during the incident giving rise to the Class Action Complaint.

16. BioLab breached its obligations and warranties to CHESI and/or was negligent in failing to properly prepare the shipment of CNT Hazardous Waste Solids in a proper fashion and in accordance with the Profile Sheet. Moreover, BioLab breached its obligations and warranties to CHESI and/or was negligent in failing to warn CHESI of the propensity for these waste solids to react despite pre-existing knowledge. BioLab's failures to properly prepare, package, warn and safeguard the shipment was a proximate cause of the incident giving rise to this Class Action Complaint.

17. As a result of BioLab's acts and omissions, CHESI has incurred damages that may exceed the jurisdictional limits for diversity jurisdiction.

18. Pursuant to the Arkansas Declaratory Judgment Act, CHESI is entitled to a declaration that BioLab is obligated to defend and indemnify CHESI for any judgment, attorney's fees, or costs arising from the incident giving rise to this Class Action Complaint.

19. While continuing to deny liability to plaintiffs, CHESI adopts and incorporates the allegations of the Class Action Complaint and First Amendment to Class Action Complaint, which allegations are reasserted in their entirety against the third-party defendant.

20. In the alternative, CHESI alleges it is entitled to contribution and/or an apportionment of fault.

21. CHESI requests a trial by jury.

Wherefore, CHESI prays that in the event of an adverse judgment by plaintiffs against it, that it

3

have judgment against third-party defendant, BioLab, for its damages, for any and all amounts which may be adjudicated against it, together with costs, attorneys' fees and all other appropriate relief to which it may be entitled.

Respectfully submitted,

BARBER, MCCASKILL, JONES & HALE, P.A.
400 W. Capitol Avenue, Suite 2700
Little Rock, AR 72201
501-372-6175

By:_____
John S. Cherry, Jr. #66012
Rick Behring Jr. #07167
ATTORNEYS FOR DEFENDANT/THIRD-PARTY
PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby state that I have served a copy of the above pleading to the following on the 5th day of March, 2013, via email and U.S. Mail.

Robert L. Depper Jr., Esq.
Depper Law Firm
101 W. Main, Suite 200
El Dorado, AR 71730
Attorney for Plaintiffs

Allen P. Roberts, Esq.
Allen P. Roberts, P.A.
P.O. Box 280
Camden, AR 71711-0280
Attorney for Plaintiffs

Dale Smart, Esq.
Phillip A. Stone, Esq.
Smart & Stone
315 E. Main
El Dorado, AR 71730
Attorneys for Plaintiffs

Samuel E. Ledbetter, Esq.
McMath Woods, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Attorney for Plaintiffs

David P. Price, Esq.
David P. Price, P.A.
P.O. Box 765
Magnolia, AR 71754-0765
Attorney for Plaintiffs

John S. Cherry, Jr.
Rick Behring Jr.

4



EXHIBIT
A

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated        **PLAINTIFFS**

VS.        NO. CV-2012- 0006-6.

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL        **DEFENDANT**

## CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, and for their cause of action against the defendant, Clean Harbors El Dorado LLC a/k/a

Ensco, a/k/a MSE Environmental, state and allege:

### INTRODUCTION

1.      This is a state law tort action in which plaintiffs and those similarly situated seek

to recover damages of less than $75,000 per individual plaintiff and per individual class member,

and less than $5,000,000 in the aggregate, inclusive of attorneys fees and costs, on theories of

negligence, absolute liability, and trespass for injuries to property and person proximately caused

by chemical releases including but not limited to sodium hypochlorite at the hazardous waste

storage and treatment facility of Clean Harbors El Dorado, LLC located in Union County,

Arkansas on or about December 18, 2012.

Page 1 of 13

FILED
1/4/13 @ 3:46 PM
CHERYL COCHRAN - WILSON, CLERK
BY _____ D.C.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiffs are residents of Union County, Arkansas.

3.     Defendant, Clean Harbors El Dorado, LLC, is a foreign limited liability company with a principal place of business in Union County, Arkansas whose duly authorized agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

4.     This Court has subject matter jurisdiction over plaintiffs' claims because the amount in controversy exceeds the minimum jurisdictional limits of the Court. No plaintiff's or class member's individual claim is equal to or greater than seventy-five thousand dollars ($75,000) inclusive of costs and attorneys fees. Moreover, the total damages of the plaintiffs and the class, inclusive of costs and attorneys fees, do not exceed five million dollars ($5,000,000), and the plaintiffs and class stipulate that they will not seek to recover an amount in excess of that amount. As such, there is neither diversity nor Class Action Fairness Act jurisdiction for this claim in federal court. Pursuant to Ark. R. Civ. P. 8(a), this pleading demands unliquidated damages. Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court.

5.     These claims are tort actions by plaintiffs against defendant doing business within Union County, Arkansas, arising out of acts and omissions of said defendant occurring in Union County, Arkansas, which involve, *inter alia,* personal injuries to plaintiffs and damage to Union

County, Arkansas, real and personal property interests of plaintiffs. This Court has personal and subject matter jurisdiction and venue is proper.

6.     Plaintiffs assert no claims involving either a federal question or statute, and plaintiffs' state law claims are not federally pre-empted. Plaintiffs' claims are maintained solely under the common law and laws of the State of Arkansas.

## FACTUAL ALLEGATIONS

7.     Clean Harbors El Dorado, LLC, at all material times, operated a hazardous waste storage and treatment facility in Union County, Arkansas.

8.     Clean Harbors El Dorado, LLC has operated its facility in a manner that has resulted in numerous fires and explosions and even more numerous releases of dangerous, toxic, and hazardous substances from its facility and the migration of those substances onto and into surrounding property and persons.

9.     On the afternoon of December 18, 2012, there was a chemical release resulting from mishandling of chemicals and a possible fire and/or explosion involving chemicals including but not limited to sodium hypochlorite at Clean Harbors' hazardous waste storage and treatment facility in Union County, Arkansas. This resulted in the release and migration of toxic fumes and air pollution which caused great danger of death and injury to all persons and property near Clean Harbors' facility. These dangers in turn required the plaintiffs and others similarly situated to be evacuated under government supervision to places of safety from the places they were occupying at the time of the release. It is believed that as many as 400 or more may have been required to evacuate.

10. On information and belief, this event was, at least initially, proximately caused by Clean Harbors not properly managing chemical waste at its facility. Specifically, at approximately 4:00 p.m. on December 18, 2012, a trailer containing chlorinated swimming pool chemicals, specifically sodium hypochlorite, was reported to have had a chemical reaction which caused a large cloud of chlorinated pool chemicals to appear over the Clean Harbors plant in Union County, Arkansas. This cloud migrated to the northwest from the Clean Harbors facility and the eastern part of the City of El Dorado, Arkansas.

11. Local authorities called for an evacuation of portions of the eastern part of the City of El Dorado, Arkansas.

12. Certain persons exposed to the chemicals migrating from defendant's facility experienced symptoms of exposure including nose bleeds, coughing, difficulty breathing, dizziness, burning eyes, irritation of membranes and discomfort.

## CLASS ALLEGATIONS

13. This is a class action brought by plaintiffs under Rule 23 of the Arkansas Rules of Civil Procedure on behalf of all persons in Union County, Arkansas, who suffered actual damages or injury as a result of the aforesaid fires and/or explosions and/or mishandling of chemicals to include but not limited to sodium hypochlorite at Clean Harbors' facility.

14. The class represented by plaintiffs includes the following:

   a. All adults who, on December 18, 2012 were required, by government order or direction to evacuate from their home or business due to the release at the defendant's facility;

   b. All adults who on December 18, 2012, were in near proximity to defendant's facility and who were exposed to chemicals that originated

from the defendant's facility which resulted in discomfort including, without limitation, nose bleeds, shortness of breath, dizziness, irritation of membranes or other physical harm or discomfort as a result of exposure to defendant's chemicals;

c. All adults who on December 18, 2012, were in close proximity to the mandatory evacuation area, and who actually evacuated their home or business based on a reasonable belief that they were in imminent danger of death or serious injury if they failed to evacuate.

15.     Excluded from the class are:

a.      Minors;

b.      Any person who claims to have suffered damages in excess of $75,000 as a result of the defendant's conduct on December 18, 2012;

c.      Federal, state, and/or local governmental entities, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions;

d.      Any entity in which defendant has a controlling interest, to include, but not limited to, their legal representatives, heirs and successors;

e.      All persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years;

f.      Incarcerated persons;

g.      All persons employed by defendant; and

h.      Any Judge in this lawsuit, persons within the third degree of consanguinity to such Judge, and employees of this Court.

16.     The exact number of class members is unknown to plaintiffs at this time. On information and belief, plaintiffs state and allege that as many as 400 persons (and perhaps more) were involved in and subject to having been evacuated on December 18, 2012. Therefore, plaintiffs believe that the persons constituting the class are so numerous that it will be impractical to bring all members of the class before this Court individually.

17.     There exist questions of law and fact common to all members of the class. These common questions of law and fact predominate over any individual questions affecting class members. Common legal and factual questions include, but are not limited to, the following:

a.     Whether the occurrence at defendant's facility on December 18, 2012, was the result of negligence on defendant's part;

b.     Whether defendant is subject to absolute liability in tort for any damage resulting from its conduct on December 18, 2012.

c.     Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in a trespass to plaintiffs who owned property, resided in or were present in the area of this migration;

d.     Whether the occurrence at defendant's facility on December 18, 2012, forced plaintiffs to evacuate or relocate;

e.     Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in economic damage to plaintiffs;

f.     Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in physical harm and associated medical expenses;

g.     Whether the migration of chemicals from defendant's facility on December 18, 2012, resulted in lost wages;

h.     Whether the migration of chemicals from defendant's facility on December 18, 2012, reasonably resulted in fear and fright to plaintiffs; and,

i.     Whether the migration of chemicals from defendant's facility resulted in damage to real and personal property interests of plaintiffs.

18.     The claims of the representative plaintiffs are typical of the claims of the class in that:

a.     The representative plaintiffs and members of the class they seek to represent experienced the same impact from the defendant's conduct which resulted in the migration of chemicals from defendant's facility on December 18, 2012;

Page 6 of 13

    b.    The representative plaintiffs and the members of the class they seek to represent experienced the same types of damages proximately caused by defendant's conduct in causing the migration of chemicals from defendant's facility on December 18, 2012; and

    c.    The factual bases and causes of action for the claims of the representative plaintiffs are common to all class members and arise out of a common course of conduct by defendant resulting in injury to all class members.

19.    Plaintiffs will fairly and adequately protect the interests of all members of the class they seek to represent, and have retained attorneys who are experienced in the prosecution of cases such as the present.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members is impracticable and this action will be manageable as a class action.

21.    Prosecution of individual actions would unduly increase the cost of litigation and cause delay, not only to plaintiffs and class members but to defendant and this Court.

22.    In contrast, a class action will avoid case management difficulties and provide multiple benefits to the parties including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each plaintiff and class member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

23.    Class treatment of the claims asserted by plaintiffs is superior to the other methods of adjudicating the claims of the class in that:

    a.    The prosecution of separate actions by individual members of the class would create a foreseeable risk of inconsistent and varying adjudications

which would establish incompatible results and standards of conduct for
defendant;

b.  Adjudications with respect to individual members of the class which
would, as a practical matter, be dispositive of the interest of the other
members not parties to the separate adjudication.

c.  Class action treatment avoids the waste and duplication inherent in
numerous individual actions and conserves the resources of the Courts.

## FIRST CAUSE OF ACTION – NEGLIGENCE

24.  All allegations in paragraphs 1 through 23 are incorporated in this first cause of
action.

25.  Defendant owes a duty to plaintiffs to use ordinary care and to not intentionally,
negligently, and unlawfully generate, label, package, ship, handle, store, dispose of, manufacture,
or release toxic, noxious, harmful, poisonous, hazardous, and dangerous substances into the air,
so as to allow them to drift upon plaintiffs' property or come into contact with plaintiffs'
persons. Defendant further owes plaintiffs a duty not to handle, store or dispose of such
substances in a manner that results in those substances exploding, burning, or giving off
poisonous gasses. Defendant further owes a duty to plaintiffs to properly operate and maintain its
hazardous waste treatment and storage facility in such a manner that plaintiffs' property and
persons are not contaminated by the discharge and migration of noxious, toxic, harmful,
hazardous, and dangerous substances from the defendant's operations.

26.  Defendant failed to use ordinary care in the following respects:

a.  Failing to properly characterize, package, handle, ship, label and identify
the nature and characteristics of the chemicals being shipped to the Clean
Harbors facility in El Dorado, Arkansas;

b.   Failing to warn of, label, identify and separate incompatible wastes that are shipped to the Clean Harbors facility to prevent them from reacting, igniting and/or exploding and /or giving off noxious gasses;

c.   Improperly and negligently storing and handling hazardous material in a manner that resulted in that material reacting, exploding, burning and/or emitting noxious gasses on and after December 18, 2012.

d.   Generating, emitting, releasing, discharging and/or disposing of toxic, noxious, harmful, hazardous or dangerous substances and waste materials in a manner that it knew or should have known would contaminate and pollute the air, water and soil of surrounding areas, including property owned by plaintiffs;

e.   Improperly designing, constructing, and operating its hazardous waste storage and treatment facility in a manner it knew or should have known would cause noxious, toxic, harmful, hazardous or dangerous substances and wastes and adversely impact the plaintiffs;

f.   Failing to warn plaintiffs that it was generating, emitting, releasing, discharging, and/or disposing of noxious, toxic, harmful, hazardous or dangerous substances in a manner that it knew or should have known would adversely impact nearby residents and/or cause harm to plaintiffs and their property;

g.   Failing to timely, reasonably and adequately investigate the potential impact of generating, emitting, releasing discharging and/or disposing of noxious, toxic, harmful, hazardous or dangerous substances into the surrounding area, including plaintiffs' property;

h.   Failing to take measures to abate, remediate or remove the aforementioned noxious, toxic, harmful, hazardous, or dangerous substances from plaintiffs' property when defendant knew or should have known that the presence of such pollutants and contaminants would adversely affect the plaintiffs' property, and the health and welfare of plaintiffs and the general public; and

i.   Violating various state and federal regulations and laws concerning the generation, handling, emitting, releasing, discharging and/or disposal of noxious, toxic, harmful, hazardous, or dangerous substances, including an

Page 9 of 13

air permit requirement prohibiting visual emissions beyond Clean Harbors' property line.

27.    As a result of defendant's failure to exercise ordinary care the plaintiffs were damaged as more fully set forth below.

## SECOND CAUSE OF ACTION – ABSOLUTE LIABILITY

28.    All allegations in paragraphs 1 through 23 above are incorporated in this second cause of action.

29.    Defendant's generating, packaging, labeling, shipping, storing, treating and disposing of hazardous wastes, and the operation of a hazardous waste storage and treatment facility where literally hundreds of thousands of tons of the most dangerous, hazardous, toxic and harmful substances known to man are stored, handled and treated constitutes an ultra-hazardous activity from which absolute liability may flow, rendering defendant absolutely liable to plaintiffs for injuries resulting from the explosion, burning, spilling, leaking, discharging, and release of toxic, dangerous, harmful and hazardous substances onto plaintiffs' property and persons.

## THIRD CAUSE OF ACTION – TRESPASS

30.    All allegations in paragraphs 1 through 23 above are incorporated in this third cause of action.

31.    Defendant, without plaintiffs' consent and without legal right, intentionally engaged in activities that resulted in noxious, toxic, harmful, hazardous, and dangerous substances entering upon plaintiffs' property. Such unauthorized invasions of plaintiffs' property interests by substances released by defendant constitute a trespass.

## DAMAGES

Page 10 of 13

32.     As a direct and proximate result of the aforesaid acts, omissions, and faults of defendant, plaintiffs have suffered substantial damages and injuries reasonably foreseeable to defendant as follows:

   a.   Costs and expenses associated with evacuation, without limitation, to meals, lodging and travel;

   b.   Costs and expenses associated with lost income;

   c.   Damage to plaintiffs' personal property and real property;

   d.   Personal injury in the form of discomfort including, without limitation, nose bleeds, shortness of breath, dizziness, irritation of membranes or other physical harm or discomfort as a result of exposure to defendant's chemicals, along with associated medical expenses;

   e.   The loss of use and enjoyment of plaintiffs' property;

   f.   The loss of peace of mind, fear and fright; and

   g.   Economic loss from business interruption.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, individually and as class representatives on behalf of all similarly situated persons and /or entities, pray the Court grant certification of this case as a class action pursuant to Ark. R. Civ. P. 23; appoint plaintiffs as class representatives and plaintiffs' counsel as class counsel; award appropriate monetary damages to plaintiffs and the proposed class in an amount sufficient to compensate them for all injuries and property damage suffered due to the acts and omissions of defendant which, when aggregated with all other elements of damages, costs and fees, will not exceed $75,000 per class member and/or $5,000,000 for the entire class; and award such additional relief in law or in equity as the Court determines fair,

reasonable and appropriate, which, collectively with all other elements of damages will not exceed $75,000 per class member and/or $5,000,000 for the entire class; and award any and all further relief to which plaintiffs and class members may prove themselves entitled to under Arkansas law.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Attorneys for Plaintiffs

By: _____
Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs



IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves          PLAINTIFFS
and all others similarly situated

VS.                              NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL                    DEFENDANT

## FIRST AMENDMENT TO CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, by and through their attorneys and do for the First Amendment to Class Action

Complaint state:

1. That on the 4th day of January, 2013, the plaintiffs herein filed a Class Action

Complaint.

2. That in the complaint, Clean Harbors El Dorado, LLC, a/k/a Ensco, a/k/a MSE

Environmental was named as defendant.

3. That since the filing of the suit, on information and belief, the plaintiffs herein would

assert that the proper defendant is not Clean Harbors El Dorado, LLC but is indeed an entity

known as Clean Harbors Environmental Services, Inc.

Page 1 of 4

FILED
2/4/13 @ 3:10 PM
CHERYL COCHRAN - WILSON, CLERK
BY _____ D.C.

4. That on information and belief, it is the understanding of the plaintiffs that Clean Harbors Environmental Services, Inc. is a Massachusetts corporation and is, therefore, a foreign corporation in the state of Arkansas and is registered to do business in the state of Arkansas. Its agent for service of process is The Corporation Company.

5. That due to the fact that it is the belief of the plaintiffs herein that Clean Harbors Environmental Services, Inc. is the proper defendant in this suit, it is the desire of the plaintiffs and the plaintiffs do by this First Amendment to Class Action Complaint, hereby substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental.

6. That by this pleading, the plaintiffs herein would substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental, and dismiss without prejudice, Clean Harbors El Dorado LLC.

7. That unless modified above, all allegations and assertions as set forth in the Class Action Complaint as filed on the 4th day of January, 2013, in the Circuit Court of Union County, Arkansas, Civil Division, bearing case no. CV-2013-0006-6, are hereby reaffirmed, realleged and reincorporated into this First Amendment of Class Action Complaint.

WHEREFORE, it is prayed that the Court consider, order, and adjudge that the defendant, Clean Harbors El Dorado, LLC, be dismissed without prejudice, and that as substitution for Clean Harbors El Dorado, LLC there be added as a defendant, Clean Harbors Environmental Services, Inc., a/k/a ENSCO, a/k/a MSE Environmental.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Attorneys for Plaintiffs

By: _____

Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs



EXHIBIT

## IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
### CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE
POWELL, JEFF ROGERS, LEE WARDEN, KATHY
WOOD and LILLIE WOODS, on behalf of themselves
and all others similarly situated

PLAINTIFFS

VS.                                   NO. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC,
a/k/a ENSCO, a/k/a MSE ENVIRONMENTAL

DEFENDANT

## FIRST AMENDMENT TO CLASS ACTION COMPLAINT

Come now the plaintiffs, Carla Gibson, Windell Lawson, Joyce Powell, Jeff Rogers, Lee

Warden, Kathy Wood, and Lillie Woods, on behalf of themselves and all others similarly

situated, by and through their attorneys and do for the First Amendment to Class Action

Complaint state:

1. That on the 4th day of January, 2013, the plaintiffs herein filed a Class Action

Complaint.

2. That in the complaint, Clean Harbors El Dorado, LLC, a/k/a Ensco, a/k/a MSE

Environmental was named as defendant.

3. That since the filing of the suit, on information and belief, the plaintiffs herein would

assert that the proper defendant is not Clean Harbors El Dorado, LLC but is indeed an entity

known as Clean Harbors Environmental Services, Inc.

Page 1 of 4

FILED
9/4/13 @ 3:10 PM
CHERYL COCHRAN - WILSON, CLERK
BY _____ D.C.

4. That on information and belief, it is the understanding of the plaintiffs that Clean Harbors Environmental Services, Inc. is a Massachusetts corporation and is, therefore, a foreign corporation in the state of Arkansas and is registered to do business in the state of Arkansas. Its agent for service of process is The Corporation Company.

5. That due to the fact that it is the belief of the plaintiffs herein that Clean Harbors Environmental Services, Inc. is the proper defendant in this suit, it is the desire of the plaintiffs and the plaintiffs do by this First Amendment to Class Action Complaint, hereby substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental.

6. That by this pleading, the plaintiffs herein would substitute as the defendant, Clean Harbors Environmental Services, Inc., a/k/a Ensco, a/k/a MSE Environmental, and dismiss without prejudice, Clean Harbors El Dorado LLC.

7. That unless modified above, all allegations and assertions as set forth in the Class Action Complaint as filed on the 4th day of January, 2013, in the Circuit Court of Union County, Arkansas, Civil Division, bearing case no. CV-2013-0006-6, are hereby reaffirmed, realleged and reincorporated into this First Amendment of Class Action Complaint.

WHEREFORE, it is prayed that the Court consider, order, and adjudge that the defendant, Clean Harbors El Dorado, LLC, be dismissed without prejudice, and that as substitution for Clean Harbors El Dorado, LLC there be added as a defendant, Clean Harbors Environmental Services, Inc., a/k/a ENSCO, a/k/a MSE Environmental.

Respectfully submitted,

ROBERT L. DEPPER, JR., #81046
DEPPER LAW FIRM, INC.
101 West Main, Suite 200
El Dorado, AR 71730
Phone 870.862.5505
Fax 870.862.7591

SAMUEL E. LEDBETTER
McMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201-2201
Phone 501.396.5400
Fax 501.374.5118

ALLEN P. ROBERTS
ALLEN P. ROBERTS, P.A.
P. O. Box 280
Camden, AR 71711-0280
Phone 870.836.5310
Fax 870.836.9662

DAVID P. PRICE
DAVID P. PRICE, P.A.
P. O. Box 765
Magnolia, AR 71754-0765
Phone 870.234.4781
Fax 870.234.7751

DALE SMART
PHILLIP A. STONE
SMART AND STONE
315 East Main
El Dorado, AR 71730
Phone 870.862.5565
Fax 870.863.5889

Attorneys for Plaintiffs

By: _____
Robert L. Depper, Jr.
One of the Attorneys for Plaintiffs



EXHIBIT
" C "

# CROMPTON CORPORATION
## MASTER WASTE MANAGEMENT
### SERVICES AGREEMENT

This Master Waste Management Services Agreement (this "Agreement") is dated as of this 18th day of April, 2001, by and between Crompton Corporation, a Delaware Corporation with offices at One American Lane, Greenwich, Connecticut 06831 ("Company") and Clean Harbors Environmental Services, Inc., a Massachusetts Corporation with its principal offices at 1501 Washington Street, P. O. Box 859048, Braintree, MA 02185-9048 ("Contractor").

### W I T N E S S E T H:

WHEREAS, Company owns and operates chemical manufacturing facilities and laboratories that, from time to time, require certain waste management Services (defined below);

WHEREAS, Contractor has advised Company that it has the capability to perform such Services; and

WHEREAS, Company and Contractor wish to enter into an agreement providing for the terms and conditions pursuant to which Contractor shall perform such Services.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Contractor, intending to be legally bound, agree as follows:

## 1.  DEFINITIONS

This Agreement contains certain terms which have specific, technical definitions. Any terms that are not specifically defined herein shall have the meaning customarily given such terms in the field of regulated waste handling, or if none, then the meaning customarily given such terms in commercial transactions. In addition to definitions contained elsewhere in this Agreement, the following terms shall have the following meanings:

"Affiliates" of a party means such party's directors, officers, employees or agents, and any person, corporation or entity directly or indirectly controlling or controlled by, or under direct or indirect common control with, such party.

"Approvals" means the following to the extent needed to provide Services in accordance with this Agreement:   permits, licenses, certificates, agreements, registrations, notices, exemptions, variances, exclusions, grants of permission, consents under contracts or deeds, or evidence of compliance with Regulations, easements, privileges, rights of way, and all other

f:\personal\wwhfile1\mwmsa-cleanharbors-crompton.doc

written or verbal affirmations from federal, state or local governmental entities (including, without limitation, international governmental entities) or private parties.

"Claims" means all assertions, allegations, complaints, causes of action, demands, suits, notices of actual or potential liability or responsibility, claims for reimbursement or contribution, orders, judgments, injunctions, requests or demands under claim of authority to take action or refrain from taking action, liens, proceedings in condemnation, executions upon judgment, or other claim, event, information, or occurrence with respect to which a reasonable person would respond or defend against. Claims shall include claims with or without merit asserting liability for personal injury, death, sickness, disease, emotional distress, loss of or damage to real or personal property, pollution, nuisance, environmental damage or response action, whether based on statute (including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 USC § 9601 et seq., and the Resource Conservation and Recovery Act of 1976, as amended, 42 USC § 6901 et seq.), strict liability, violation of Laws and Regulations, tort, warranty, contract, or the status of a party as seller, buyer, owner, operator, generator, transporter, disposer or otherwise in association with handling products, facilities or materials.

"Conforming Waste Materials" means Waste Materials which in all material respects conform to the descriptions and specifications set forth in the applicable Waste Material Profile Sheet.

"Contractor" means the Contractor and any subcontractor(s) approved in writing by Company pursuant to Section 8 hereof.

"Dispose" or "Disposal," as such terms relate to Waste Materials, means to treat, alter, recover, bury, landfill, recycle, mix, process, clean, incinerate, destroy or otherwise dispose.

"Disposal Facility" means a disposal facility specified in a Project Authorization.

"Hazardous Waste" means hazardous waste and toxic or radioactive substances as such terms are defined by applicable federal, state, or local laws, ordinances, orders, rules or regulations.

"Indemnitee" has the meaning set forth in Section 11(c) hereof.

"Indemnitor" has the meaning set forth in Section 11(c) hereof.

"Laws and Regulations" means any United States or foreign federal, state or local law, regulation, ordinance, rule or order in effect from and after the date of this Agreement (including following expiration or termination hereof), including, without limitation, laws, regulations, ordinances, rules or orders pertaining to health, safety or the protection of the environment and any other laws, regulations, ordinances, rules or orders which govern (i) the existence, removal or remediation of Waste Materials or Hazardous Waste on real property; (ii) the emission, discharge,

release, or control of Waste Materials or Hazardous Waste into or in the environment; or (iii) the use, generation, handling, transport, treatment, storage, disposal or recovery of Waste Materials or Hazardous Waste.

"Losses" means any and all Claims, liabilities, losses, costs and expenses (including reasonable attorneys' fees and expenses).

"Non-Conforming Waste Materials" means those Waste Materials which do not conform in one or more material respects with the descriptions and specifications set forth in the applicable Waste Material Profile Sheet.

"Project Authorization" means an executed project authorization in the form set forth as Exhibit A hereto.

"Services" has the meaning set forth in Section 2 hereof.

"Waste Material Profile Sheet" means the written description of Company's Waste Materials attached to and incorporated by reference into a Project Authorization.

"Waste Materials" means the materials generated by Company from time to time and specified in a Project Authorization.

## 2.   PROJECT AUTHORIZATIONS

From time to time while this Agreement is in effect, the parties shall enter into one or more Project Authorizations in the form attached as Exhibit A hereto describing:   (a) the laboratory, loading, waste characterization, waste distillation and/or separation, removal, transportation and Disposal services (each such service, a "Service" and collectively, the "Services") that Contractor is authorized to perform in respect of Company's Waste Materials; (b) the Company facility at or on behalf of which such Services are authorized to be performed; (c) the Waste Materials that Contractor is authorized to handle on Company's behalf, the specifications for which shall be set forth in a Waste Material Profile Sheet attached to the Project Authorization; (d) if the Services involve transportation and/or Disposal Services, the Disposal Facility or Disposal Facilities authorized for the Disposal of such Waste Materials; and (e) the fees payable in respect of the Services.  Thereafter, each time Company requires Services of the nature set forth on a Project Authorization, Company will initiate such Services through delivery of a Company purchase order to Contractor, a copy of which is attached as Annex 1 to Exhibit A. Terms on preprinted back of Purchase Order or other preprinted document issued by Company shall be void and are hereby expressly rejected by Contractor and the terms of this Agreement shall prevail.  Project Authorizations may be amended from time to time on the mutual written agreement of the parties to reflect changes thereto agreed upon by Company and Contractor.

3.   **SERVICE PROCEDURES; RECORD KEEPING; RIGHT OF INSPECTION**

(a)    At the request of Contractor, Company shall provide a sample of the Waste Material or analytical data representative of the Waste Materials for which Services are to be performed.

(b)    If the Services involve transportation and/or Disposal of Waste Materials, Company shall tender Waste Materials at times, places and in quantities specified in the Project Authorization or the purchase order, as the case may be. Company, at the time and place of tender of the Waste Materials, will provide Contractor with all completed documents, shipping papers and manifests required for lawful transfer, transportation and/or Disposal of the Waste Materials  pursuant to applicable Laws and Regulations.

(c)    If the Services involve distillation and/or separation of the individual components of Waste Materials, Contractor shall perform such Services only at the locations specified in the governing Project Authorization, and shall return to Company the recovered product distilled and/or separated from Waste Materials in accordance with the terms and conditions of such Project Authorization. All by-products remaining after the performance of such distillation and/or separation Services shall either be disposed of at a Disposal Facility designated in the Project Authorization or, if such by-products are useable or salable by Contractor, shall be used and/or sold at Contractor's own risk. Company makes no representation or warranty of any kind or nature whatsoever with respect to such by-products, and Contractor acknowledges and agrees that such by-products are deemed transferred to Contractor "AS/IS."

(d)    Contractor shall perform the Services in accordance with the terms of, and solely at the locations specified in, the governing Project Authorization. If Contractor is performing transportation Services which involve transporting Waste Materials from a Company facility to a Disposal Facility owned by a third party, risk of loss of Waste Materials will pass to Contractor when such Waste Materials pass the flange of Company's tanks or vessels from which such Waste Materials originate or, if such Waste Materials are in drums, totes or other packaging or containers, when such packaging or containers are loaded onto Contractor's vehicle transporting the same. If Contractor's Services involve the collection and transportation of soil or other debris from a Company facility to a Disposal Facility owned by a third party, risk of loss of Waste Materials will pass to Contractor when such soil or debris is loaded onto Contractor's vehicle transporting the same.  If Contractor's Services involve transportation of Waste Materials to a Disposal Facility that is also owned by Contractor or one of its affiliated companies, title to such Waste Materials will pass to Contractor simultaneously with the passage of risk of loss as provided in this Section 3(d).

(e)    In the event that a Project Authorization requires Contractor to Dispose of Waste Materials, Contractor shall Dispose of such Waste Materials in accordance with the Project Authorization and all applicable Laws and Regulations, but in any event not later than ninety (90)

days following receipt of such Waste Materials at the Disposal Facility. In the event that Contractor knows or has reason to believe that Contractor will be unable to dispose of Waste Materials within 90 days of its receipt of such Waste Materials, Contractor shall notify Company of the same, and allow Company to determine whether such Waste Materials should remain with the Contractor, or otherwise direct the future handling of the same. In the event that Company arranges for transportation and disposal of such Waste Materials to an alternate facility, such transportation and disposal shall be at Contractor's expense, and Contractor shall promptly refund any payment received from Company in connection with performance of Services in connection with such Waste Materials.

(f)     If Contractor arranges for transportation of Waste Materials from a Company facility to a Disposal Facility, as specified in the governing Project Authorization, Contractor shall not transfer Waste Materials to, or place Waste Materials in the possession or control of, any person or Disposal Facility not authorized in writing by Company under the governing Project Authorization.

(g)     Contractor acknowledges that Company has informed Contractor that safety is unequivocally Company's number 1 priority at all Company facilities worldwide and, in connection therewith, Company requires all of its employees and third parties present at a Company facility to follow Company's safety and health procedures at all times while performing any services or other work at a facility. Contractor agrees that, while performing Services at a Company facility, it shall follow Company's safety and health procedures attached hereto as Exhibit B, and shall keep the project location under Contractor's control in a reasonably organized and clean condition.

(h)     Company shall provide adequate work space and access to Company's facilities specified in the Project Authorization as may be necessary to allow Contractor to perform the Services. Contractor agrees to take all necessary steps required by Laws and Regulations to eliminate, reduce and correct any hazardous, unsafe, unhealthy or environmentally unsound conditions resulting from its performance of the Services. It is understood and agreed, however, that Contractor shall not be responsible for the elimination or abatement of safety hazards created by or otherwise resulting from work being performed by Customer's employees, its other contractors or agents. In the event that Contractor believes such conditions exist and that such conditions may result in hazardous, unsafe, unhealthy or environmentally unsound conditions resulting from its performance of the Services, it shall provide Company with written notice of the same such that Company may address the same in advance of Contractor's performance of the Services at issue or dispute the same.

(i)     Contractor shall maintain records sufficient for Company to verify all information required to recalculate invoices, confirm the volume and characterization of the Waste Materials, and determine the time, place, final disposition, and other information concerning each activity involved in performing the Services. Contractor shall maintain such records for the period required by applicable Laws and Regulations. Promptly upon Company's request, Contractor shall grant Company access to Contractor's facilities where such records are maintained to allow

Company to inspect and audit the same. UCC shall have the right, upon advance notice of not less than twenty-four hours, to inspect, at its expense, Contractor's or its approved subcontractors' facilities, transportation vehicles or vessels, containers, Disposal Facilities and Disposal operations. Such inspections shall be conducted during Contractor's normal business hours. Information obtained, records reviewed, and observations made during such inspections shall be treated as confidential in accordance with Section 10 of this Agreement.

(j)     Contractor shall provide Company with prompt notice of any Claim, demand, investigation, or proceeding, whether statutory, civil or criminal, in which Contractor (or its Affiliates or approved subcontractors) is involved, or during the term of this Agreement becomes involved, either as defendant or third party, which alleges that Contractor (or its Affiliates or approved subcontractors) violated Laws and Regulations with respect to the ownership or operation of a Disposal Facility, and with respect to the handling of the Waste Materials.

(k)     Contractor shall provide Company with immediate notice of any release of Waste Materials during Contractor's transport of Waste Materials to a Disposal Facility owned by a third party or during the return of any Non-Conforming Waste Materials to Company or a third party, if approved by Company, pursuant to Section 8 hereof.

## 4.     INDEPENDENT CONTRACTOR

Neither Company nor Contractor shall be deemed the partner, co-venturer, agent or representative of the other, and neither party shall have the right or obligation to bind the other, or to hold itself out as having that right. Contractor shall perform all Services as an independent contractor, and shall exercise exclusive authority over the operations and activities of Contractor's employees, approved subcontractors and agents involved in performing Services. None of Contractor, any of its employees, or Contractor's approved subcontractors shall in any way, directly or indirectly, expressly or by implication, be deemed to be employees or agents of Company, and Contractor assumes full responsibility for its employees' and subcontractors' acts and omissions, and all terms and conditions of their employment.

## 5.     REPRESENTATIONS, WARRANTIES AND COVENANTS OF CONTRACTOR

Contractor represents and warrants to, and covenants with, Company that:

(a)     Contractor understands the hazards and risks which are presented to persons, property and the environment in providing Services pursuant to this Agreement and the agreed upon Project Authorizations. Contractor shall inform its employees, contractors, agents, carriers and customers who may become exposed to Waste Materials of any hazards associated with Waste Materials, and of the proper storage, handling and use procedures for Waste Materials.

(b)     Contractor is lawfully engaged in the business of collection, transportation, and/or Disposal of the Waste Materials and/or the performance of such other Services as may be specified in the Project Authorization(s), and has developed or otherwise acquired the requisite expertise for the collection, transportation, and/or Disposal of such Waste Materials and/or provision of such other agreed upon Services.

(c)     Contractor  will provide all Services in a skillful, safe, efficient, timely and workmanlike manner and in full compliance with all Laws and Regulations and industry practices in effect in the jurisdictions where Services are performed. Contractor shall take all precautions necessary in performing the Services to avoid injury to persons and damage to property and natural resources.

(d)     Contractor has as of the date hereof, and will maintain in full force and effect at all times during the term of this Agreement, any and all Approvals necessary or appropriate for the performance of Services. Upon execution of this Agreement, Contractor shall provide Company, as requested, with a copy of any or all Approvals.

(e)     Contractor shall provide qualified personnel, project administration, supervision, equipment, facilities, treatment or disposal facilities, supplies, tools and all other materials necessary for the proper performance of all Services.

(f)     If Contractor is the owner or operator of any Disposal Facility specified in any Project Authorization executed pursuant hereto, such Disposal Facility will have, at all times while such Project Authorization is in effect, all Approvals necessary to allow such Facility to accept and Dispose of the Waste Materials described by Company in all applicable Waste Material Profile Sheets.   Upon execution of the Agreement, Contractor shall provide Company, as requested, with a copy of any or all Approvals. Contractor shall provide Company with reasonable advance notice if any such Approvals are to expire and not be renewed during the term of this Agreement or any Project Authorization, or becomes the subject of judicial or administrative action seeking revocation or suspension. Such notice shall also be provided if Contractor determines not to seek any necessary Approvals which become required after execution of a Project Authorization.

6.     REPRESENTATIONS AND WARRANTIES OF COMPANY

(a)     Company represents and warrants to Contractor that:

(i)     Waste Materials tendered to Contractor will conform in all material respects to the descriptions and specifications contained in the applicable Waste Material Profile Sheets.

(ii)   Company shall have good and valid title to Waste Materials tendered to Contractor from time to time hereunder.

(b)   Except as set forth in Section 6(a), Company MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE WHATSOEVER REGARDING THE WASTE MATERIALS INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE.

## 7.   SUBCONTRACTORS; ASSIGNMENT

Contractor shall not use any subcontractors to perform Services without the prior written consent of Company.   In the event that Contractor proposes to appoint a subcontractor, Contractor shall give Company prior written notice of the same along with a copy of any or all of the subcontractor Approvals if requested, and shall provide Company with such information as may be reasonably requested by Company to allow Company to determine whether to consent to the appointment of such subcontractor.   In the event that Company consents to such an assignment:   (a) such consent shall not operate to relieve Contractor of its responsibilities hereunder, (b) Contractor shall remain fully liable to Company for the performance of Services assigned to any approved subcontractors, and (c) all references in this Agreement to Contractor shall be deemed to apply to approved subcontractors.   Contractor shall ensure that all approved subcontractors have all necessary Approvals, maintain all necessary insurance, and perform any and all Services in accordance with the terms of this Agreement.   Except as permitted by this Section 7, Contractor shall not assign this Agreement, in whole or in part, without the prior written consent of Company .

## 8.   PROCEDURES FOR REJECTION OF NON-CONFORMING WASTE PRODUCTS

(a)   Not later than ten (10) business days following receipt of Waste Materials at a Disposal Facility, Contractor may, in its sole discretion, reject any Waste Materials that fail in any material respect to conform to the descriptions and specifications in the applicable Waste Material Profile Sheet.   Notice of rejection of Non-Conforming Waste Materials must be in writing, and must specify the manner in which the Waste Materials are non-conforming.   Contractor shall not be entitled to reject any Waste Materials if the condition of the Waste Materials has been affected in any way by any of the actions that fall within the definition of the term "Disposal" hereunder. Waste Materials not rejected in accordance with the provisions of this Section 8(a) shall be rebuttably presumed to be Conforming Waste Materials.   At any proceeding at which the foregoing presumption regarding any Waste Materials is at issue, Contractor shall have the burden of proving by a preponderance of the evidence that any Waste Materials presumed to be Conforming Waste Materials pursuant to this Section 8(a) were Non-Conforming Waste Materials prior to Disposal.

(b)    If Contractor rejects Waste Materials, Contractor and Company shall, in good faith, attempt to amend the Project Authorization, the Waste Material Profile Sheet, or otherwise correct any non-conformity. If the parties cannot, within a reasonable time after rejection, not to exceed 14 days, agree on necessary amendments or otherwise correct the non-conformity, Company shall make prompt arrangements for the removal of Non-Conforming Waste Materials from the Disposal Facility. Company agrees to pay Contractor its reasonable expenses and charges incurred in performing Services in respect of any Non-Conforming Waste Materials returned to Company pursuant to this Section 8. Contractor shall not Dispose of, or transfer to a third party title to or possession of, any Non-Conforming Waste Materials without the prior written consent of Company.

(c)    Upon mutual agreement of the parties that Waste Materials initially rejected by Contractor are Conforming Waste Materials as a result of an amendment to the Project Authorization, the Waste Material Profile Sheet, or other correction of a non-conformity, the notice of rejection as to such Waste Materials shall be deemed null and void as of the time of its original issuance.

(d)    Upon notice of rejection of Non-Conforming Waste Material in accordance with Section 8, title to and risk of loss as to Non-Conforming Waste Materials shall revert to Company.

## 9.    COMPENSATION

Company shall compensate Contractor for Services performed hereunder in accordance with the fees set forth in each Project Authorization. The fees set forth in each Project Authorization shall be subject to increase or decrease in accordance with the following:    (a) Contractor shall be permitted to decrease fees at any time in any amount; (b) Contractor shall be permitted to increase fees, upon Companies written approval, not more frequently than once annually, on each anniversary of the date of a Project Authorization. All such adjustments resulting in increases to fees shall be submitted to Company in writing with supporting documentation of the increase not later than 30 days prior to the date of the proposed change. The Contractor shall submit invoices to Company at the address set forth herein for delivery of notices. Invoices shall be paid by Company not later than forty-five (45) days from date of receipt thereof.

## 10.    CONFIDENTIALITY

(a)    During the term of this Agreement, Company and Contractor may divulge to one another confidential information relating to the Services, which may include, without limitation, information relating to the Services, which may include, without limitation, information relating to the nature and characterization of the Waste Materials, this Agreement, and pricing of Services

(all of the foregoing, individually or collectively, the "Confidential Information"). Each of Company and Contractor recognizes that the Confidential Information is the proprietary information of the other and, accordingly, each of Company and Contractor shall: (i) take all reasonable steps to prevent disclosure of the Confidential Information to others; (ii) disclose Confidential Information only to those of its employees who have a need to know the Confidential Information in connection with the performance of this Agreement; and (iii) not utilize any of the Confidential Information for any purpose other than in connection with the performance of this Agreement; provided that the foregoing obligations of confidentiality and non-use shall not extend to any of the Confidential Information which: (X) as shown by prior written records, was already in a party's possession at the time of its disclosure by the disclosing party; (Y) is, or becomes, generally available to the public through no fault or omission of the receiving party; or (Z) is received by such party in good faith from a third party who discloses such information on a non-confidential basis without violating any obligation of secrecy as to the information disclosed or (AA) disclosure is required by law. Information which is specific shall not be considered as being within the foregoing exceptions merely because it is embraced by general information within the exceptions. Also, any combination of features shall not be considered as being within the above exceptions merely because individual features of the combination are within the exceptions, but only if the combination itself, its principle of operations and its value or advantages are within the exceptions.

(b)     Upon expiration or termination of this Agreement, any and all media containing Confidential Information shall be promptly returned to the disclosing party, and no copies or abstract thereof shall be retained by the receiving party.

## 11.   INDEMNIFICATION

(a)     Contractor agrees to indemnify, defend and save harmless Company and its Affiliates from and against any and all Losses to the extent caused by:

(i)     any breach by Contractor, its Affiliates or any subcontractors of any of the representations, warranties or covenants of Contractor set forth in this Agreement;

(ii)    the actions, omissions or negligence of Contractor, its Affiliates or any subcontractors in performing the Services;

(iii)   failure by Contractor, its Affiliates or any subcontractors to comply with any Laws and Regulations applicable to the performance of the Services, or to maintain any required Approvals;

(iv)    assertion by any third party (including, without limitation, any governmental or other regulatory agency) of any Claims that any Disposal Facility or other facilities owned or operated by Contractor, or otherwise used by Contractor in connection with its performance of the Services, fails to comply with Applicable Laws and Regulations, including, without limitation, any Claims pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 USC §9601 et seq. and the Resource Conservation and Recovery Act as amended, 42 U.S.C. §§ 6901, et. seq.; and

(v)    assertion by any third party (including, without limitation, any governmental or other regulatory agency) of any Claims related to any Disposal Facility or other facilities owned, operated or otherwise used by Contractor in connection with its performance of the Services, including, without limitation, claims for contribution in connection with a response action, regardless of whether such Claims are brought pursuant to Applicable Laws and Regulations or under theories of common law.

(b)    Company agrees to indemnify, defend and save harmless Contractor, its Affiliates and any approved subcontractors from and against any and all Losses to the extent caused by:

(i)    any breach by Company of any of the representations, warranties or covenants of Company set forth in this Agreement; or

(ii)    any Waste Materials properly rejected as Non-Conforming Waste Materials in accordance with Section 8(a) of this Agreement; or

(iii)    any gross negligence on the part of Company or its employees.

(c)    The party entitled to indemnification hereunder (the "Indemnitee") shall promptly notify the party providing indemnification hereunder (the "Indemnitor") in writing, in reasonable detail, of all matters which may give rise to the right to indemnification hereunder, it being understood that if the Indemnitor does not receive notice of any matter known to the Indemnitee and as to which the Indemnitee is entitled to indemnification hereunder in time to contest the determination of any such liability which is susceptible to being successfully contested, the Indemnitor shall not be obligated to indemnify the Indemnitee with respect thereto. Neither the Indemnitor nor the Indemnitee shall admit any liability with respect to, or settle, compromise, or discharge any matter covered by this Article 11, without the prior written consent of the other. The Indemnitor shall have the right to defend through counsel of its own choosing, at its own expense, any action which may be brought by a third-party in connection therewith, provided, however, that the Indemnitee shall have the right to have its counsel participate in such defense at its own expense. Indemnitor and Indemnitee shall keep each other informed of all settlement negotiations with third parties. Indemnitor and Indemnitee shall permit each other reasonable access to books and records and otherwise cooperate with all reasonable requests of each other in connection with any indemnifiable matter resulting from a claim by a third-party.

(d)    The indemnification set forth in this Article 11 is intended to be personal to Contractor and each permitted assignee or subcontractor of Contractor, and shall survive termination, expiration or assignment of this Agreement.

(e)    In consideration of Company's  continued use of Contractor's Services, the terms and conditions of this Article 11 shall apply to any and all waste transportation and disposal services provided by Contractor,  its predecessors, and its predecessors' subsidiaries and affiliates prior to execution of this Agreement.

(f)    Neither party shall be liable to the other for damages for loss of use or lost profits.

## 12.    INSURANCE

(a)    Contractor shall procure and maintain, at its expense, during the term of this Agreement, at least the following insurance covering activities performed under, and contractual obligations undertaken in, this Agreement:

| Coverage | Limits |
| --- | --- |
| Worker's Compensation | Statutory |
| Employer's Liability | $500,000 each occurrence<br>$500,000 each accident<br>$500,000 each disease<br>$500,000 policy limit |
| Commercial General Liability<br>(bodily injury/property damage) | $5,000,000 combined single limit |
| Automobile Liability (bodily injury) | $5,000,000 each person<br>$5,000,000 each occurrence |
| Automobile Liability (property damage) | $5,000,000 each occurrence |
| Pollution Liability | $3,000,000 per occurrence<br>$6,000,000 aggregate |

(b)    General and Pollution Liability of the above described policies endorsed to specifically cover Contractor's contractual liability under this Agreement.  Contractor agrees to furnish insurance certificates evidencing Contractor's compliance with this Article 12 prior to or simultaneously with beginning performance under this Agreement.  Such policies shall contain a requirement that Company be given at least 30 days advance written notice of cancellation of, or a material reduction in, coverage.

(c)     Insurance policies evidencing the coverages required hereby shall contain or be endorsed to include the following :

(i)     Pollution coverage in respect of Services provided pursuant to this Agreement. "Covered operations" designated by the policy must specifically include all Services performed pursuant to this Agreement.     Any exclusions or limitations affecting Services performed under this Agreement shall be deleted.

(ii)     Company and its affiliates, representatives, officers and employees shall be named as additional insureds in respect of liability arising out of Services performed by or on behalf of Contractor; products and completed operations of Contractor; and automobiles owned, leased, hired or borrowed by Contractor. The coverage shall contain no special limitations on the scope of protection afforded to additional insureds.

(iii)     If Contractor uses sub or independent contractors, Contractor must require each subcontractor to maintain its own insurance coverage for performance of Services at the agreed coverage limits.

(iv)     For any claims related to Services provided pursuant to this Agreement, Contractor's insurance shall be primary insurance in respect of Company, its affiliates, representatives, officers and employees.  Any insurance or self insurance maintained by Company shall be excess and non contributory of Contractor's insurance.

(v)     The General Liability policy must be modified to include the following: "the insolvency or bankruptcy of the insured or of the insured's estate will not relieve the insurance company of its obligations under this policy."

(vi)     The policy forms should be limited to those policies that respond to pollution incidents and must cover clean up costs and any and all restrictions must be disclosed to Company for approval.

(vii)     The Commercial General Liability, Automobile Liability and Pollution Liability policies must "pay on behalf of" rather than "indemnify" the insured.

(viii)     Loading and unloading limitations and exclusions must be amended to include coverage for mobile equipment and automobiles.

(ix)     The Automobile Liability policy must contain an MCS-90 endorsement covering environmental restoration.

(x)     If ISO Automobile Insurance Form # CA 00 01 12 93 or its equivalent is used, exclusion 11 must be amended in the following manner:  (A)Delete section a.(1): (Pollution)

"Being transported or towed by, or handled for movement into, onto or from the covered auto;" and (B) Delete section a(1) b. "otherwise in the course of transit by the insured".

(d)     Acceptance of insurance submitted by Contractor does not relieve or decrease in any manner the liability of the Contractor for performance of Services pursuant to this Agreement. The requirements outlined herein shall in no way be construed to limit or eliminate Contractor's liability which arises from performance of Services under this Agreement.  The Contractor is responsible for any Losses which exceed Contractor's insurance policy liability limits, or which may be outside the coverage scope of the policies.

(e)     Any policy of insurance in respect of Services performed pursuant to this Agreement must be acceptable to Company.  Contractor's insurers must have a minimum rating of A-7 as evaluated by the most current A.M. Best rating guide.  If Contractor's insurers have ratings less than A-7, Contractor must receive specific written approval from Company prior to delivering any Services pursuant to this Agreement.

(f)     Contractor shall disclose to Company in writing the amounts and the nature of financial assurance mechanisms in place for all Disposal Facilities listed in any Project Authorization.

## 13.   TERM AND TERMINATION

(a)     The term of this Agreement shall be for an initial period of one (1) year from the date hereof and shall thereafter be automatically renewed for consecutive one (1) year terms. Either party may terminate this Agreement at any time for any reason on not less than thirty (30) days advance written notice to the other party.

(b)     Company may terminate Services remaining under any individual Project Authorization immediately, with or without cause, on written notice to Contractor.  In the event of such termination, Company shall remain liable for payment for Services performed in accordance with this Agreement through the effective date of termination.

## 14.   EXCUSE OF PERFORMANCE

(a)     Either party may suspend performance of this Agreement, except for the payment of money for Services already rendered, at any time in the event the performance of Services is prevented by a cause or causes beyond the reasonable control of such party.  Such causes shall include, but not be limited to, acts of God, acts of war, riot, fire, explosion, accident, flood, or sabotage; lack of adequate fuel, power, raw materials, labor or transportation facilities; changes in Laws and Regulations; breakage or failure of machinery or apparatus; national defense requirements; injunctions or restraining orders; labor trouble, strike, lockout or injunction

14

(provided that neither party shall be required to settle a labor dispute against its own best judgment).

(b)     The party asserting a right to suspend performance under this Section must, promptly after that party acquires knowledge of the cause for suspension, notify the other party in writing of the cause for suspension, the performance suspended, and the anticipated duration of such suspension. The party receiving such notice of suspension may elect, in its sole discretion, to terminate Services to be performed under any one or more Project Authorizations affected by the suspension. Such election shall be made, if at all, by written notice received not later than fifteen (15) days following receipt of the notice of suspension. If no such election is made, then the respective obligations of the parties shall, except for the payment of money for Services already rendered, be suspended until the cause or causes underlying the suspension have been removed or otherwise eliminated.

## 15.    MISCELLANEOUS

(a)     Each of the provisions contained in this Agreement shall be severable, and the unenforceability of one shall not affect the enforceability of any others or of the remainder of this Agreement.

(b)     This Agreement may not be amended, supplemented or otherwise modified except by an instrument in writing signed by all the parties hereto. This Agreement contains the entire agreement of the parties hereto with respect to the matters covered hereby, superseding all prior agreements and all negotiations, prior discussions and preliminary agreements made prior to the date hereof. In the event of a conflict between the terms or conditions of a Project Authorization or Purchase Order and this Agreement, the terms and conditions of this Agreement shall control.

(c)     This Agreement is solely for the benefit of the parties hereto and their respective Affiliates and no provision of this Agreement shall be deemed to confer upon third parties any remedy, claim, liability, reimbursement, claim or action or other right in excess of those existing without reference to this Agreement.

(d)     The failure of any party to enforce any condition or part of this Agreement at any time shall not be construed as a waiver of that condition or part, nor shall it forfeit any rights to future enforcement thereof.

(e)     This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Connecticut without regard to the conflicts of laws provisions thereof.

(f)     More than one counterpart of this Agreement may be executed by the parties hereto, and each fully executed counterpart shall be deemed an original.

(g)     Company and Contractor agree that any suit, action or proceeding brought by either party against the other party to this Agreement in connection with or arising out of this Agreement shall be brought solely in the Federal Courts of the State of Connecticut or, if such court lacks jurisdiction, in the State Courts of the State of Connecticut.

(h)     All communications, notices and consents provided for herein shall be in writing and be given in person or by means of telex, facsimile or other means of wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type) or by mail, and shall become effective (x) on delivery if given in person, (y) on the date of transmission if sent by telex, facsimile or other means of wire transmission, or (z) four business days after being deposited in the United States mails, with proper postage and documentation, for first-class registered or certified mail, prepaid.

Notices shall be addressed as follows:

(i)  If to Contractor:

Clean Harbors Environmental Services Companies
761 Middle Street
Bristol, CT 06010
Attention: Lisa Bartolini
Facsimile Number: 860-585-1740
Telephone Number: 860-583-8917
(ii) If to Company, to:

with copy to:
Clean Harbors Enviro. Serv. Inc.
1501 Washington Street
PO Box 859048
Braintree, MA 02185-9048
Attn. General Counsel,
    Urgent Contract Matter

Crompton Corporation
One American Lane
Greenwich, Connecticut 06831-2559
Attention: Manager of Environmental Purchasing
Facsimile Number: 203-552-2855

provided, however, that if any party shall have designated a different address by notice to the other, then to the last address so designated.

(i)     The language in all parts of this Agreement shall be construed, in all cases, according to its fair meaning. The parties acknowledge that each party and its counsel have reviewed and revised this Agreement and that any rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

f:\personal\wwhfile1\mwmsa-cleanharbors-crompton.doc

16



# WASTE MATERIAL PROFILE SHEET
## Clean Harbors Profile No. CH25175WTS

EXHIBIT "D"

## A. GENERAL INFORMATION

| | | |
|---|---|---|
| GENERATOR EPA ID #/REGISTRATION # | GAD991274820 | GENERATOR NAME: **BioLab - A Chemtura Company** |
| GENERATOR CODE (Assigned by Clean Harbors) | BI0588 | CITY **Conyers**  STATE/PROVINCE **GA**  ZIP/POSTAL CODE **30012** |
| ADDRESS **1700 Old Covington Highway** | | PHONE: (770) 483-2600 |
| CUSTOMER CODE (Assigned by Clean Harbors) | WA000002 | CUSTOMER NAME: **Waste Technology Services** |
| ADDRESS **435 North Second Street** | | CITY **Lewiston**  STATE/PROVINCE **NY**  ZIP/POSTAL CODE **14092** |

## B. WASTE DESCRIPTION

WASTE DESCRIPTION: **CNT Hazardous Waste Solids (KSW)**

PROCESS GENERATING WASTE: **Powder production, receiving and returns operations, floor sweepings, dust collector wastes and off-spec powders**

IS THIS WASTE CONTAINED IN SMALL PACKAGING CONTAINED WITHIN A LARGER SHIPPING CONTAINER ?   **No**

## C. PHYSICAL PROPERTIES (at 25C or 77F)

**PHYSICAL STATE**
- SOLID WITHOUT FREE LIQUID
- [✓] POWDER
- MONOLITHIC SOLID
- LIQUID WITH NO SOLIDS
- LIQUID/SOLID MIXTURE
- % FREE LIQUID
- % SETTLED SOLID
- % TOTAL SUSPENDED SOLID
- SLUDGE
- GAS/AEROSOL

**NUMBER OF PHASES/LAYERS**

| | 1 | 2 | 3 | |
|---|---|---|---|---|
| | | | | TOP  0.00 |
| % BY VOLUME (Approx.) | | | | MIDDLE  0.00 |
| | | | | BOTTOM  0.00 |

**ODOR**
- NONE
- [✓] MILD
- STRONG
- Describe:

**BOILING POINT °F (°C)**
- <= 95 (<=35)
- 95 - 100 (35-38)
- 101 - 129 (38-54)
- >= 130 (>54)

**VISCOSITY (if liquid present)**
- 1 - 100 (e.g. Water)
- 101 - 500 (e.g. Motor Oil)
- 501 - 10,000 (e.g. Molasses)
- > 10,000

**MELTING POINT °F (°C)**
- < 140 (<60)
- 140-200 (60-93)
- [✓] > 200 (>93)

**COLOR**  *varies*

**TOTAL ORGANIC CARBON**
- [✓] <= 1%
- 1-9%
- >= 10%

| FLASH POINT °F (°C) | pH | SPECIFIC GRAVITY | ASH | | BTU/LB (MJ/kg) |
|---|---|---|---|---|---|
| < 73 (<23) | <= 2 | < 0.8 (e.g. Gasoline) | < 0.1 | > 20 | [✓] < 2,000 (<4.6) |
| 73 - 100 (23-38) | 2.1 - 6.9 | 0.8-1.0 (e.g. Ethanol) | 0.1 - 1.0 | Unknown | 2,000-5,000 (4.6-11.6) |
| 101 -140 (38-60) | [✓] 7 (Neutral) | [✓] 1.0 (e.g. Water) | [✓] 1.1 - 5.0 | | 5,000-10,000 (11.6-23.2) |
| 141 -200 (60-93) | 7.1 - 12.4 | 1.0-1.2 (e.g. Antifreeze) | 5.1 - 20.0 | | > 10,000 (>23.2) |
| > 200 (>93) | >= 12.5 | > 1.2 (e.g. Methylene Chloride) | | | Actual: |

## D. COMPOSITION

(List the complete composition of the waste. Include any inert components and/or debris. Ranges for individual components are acceptable. If a trade name is used, please supply an MSDS. Please do not use abbreviations.)

| CHEMICAL | MIN | -- | MAX | UOM |
|---|---|---|---|---|
| 1-BROMO-3-CHLORO-5,5 DIMETHYLHYDANTOIN | 10.0000000 | – | 30.0000000 | % |
| 1-BROMO-3-CHLORO-5,5-DIMETHYL-2,4-IMIDAZOLIDINEDIONE | 10.0000000 | – | 30.0000000 | % |
| 1-BROMO-3-CHLORO-5,5-DIMETHYLHYDANTOIN | 10.0000000 | – | 30.0000000 | % |
| COPPER CITRATE | 0.1000000 | – | 3.0000000 | % |
| COPPER SULFATE | 0.1000000 | – | 3.0000000 | % |
| INORGANIC POTASSIUM SALTS | 1.0000000 | – | 30.0000000 | % |
| LITHIUM HYPOCHLORITE | 10.0000000 | – | 50.0000000 | % |
| ORCO ROYAL BLUE DP-25 | 0.1000000 | – | 3.0000000 | % |
| POTASSIUM PEROXYMONOSULFATE | 10.0000000 | – | 50.0000000 | % |
| SODIUM BICARBONATE | 10.0000000 | – | 50.0000000 | % |

DOES THIS WASTE CONTAIN ANY HEAVY GAUGE METAL DEBRIS OR OTHER LARGE OBJECTS (EX., METAL PLATE OR PIPING >1/4" THICK OR >12" LONG, METAL REINFORCED HOSE >12" LONG, METAL WIRE >12" LONG, METAL VALVES, PIPE FITTINGS, CONCRETE REINFORCING BAR OR PIECES OF CONCRETE >3")?   YES ☐  [✓] NO

If yes, describe, including dimensions:

DOES THIS WASTE CONTAIN ANY METALS IN POWDERED OR OTHER FINELY DIVIDED FORM?   YES ☐  [✓] NO

DOES THIS WASTE CONTAIN OR HAS IT CONTACTED ANY OF THE FOLLOWING: ANIMAL WASTES, HUMAN BLOOD, BLOOD PRODUCTS, BODY FLUIDS, MICROBIOLOGICAL WASTE, PATHOLOGICAL WASTE, HUMAN OR ANIMAL DERIVED SERUMS OR PROTEINS OR ANY OTHER POTENTIALLY INFECTIOUS MATERIAL?   YES ☐  [✓] NO

I acknowledge that this waste material is neither infectious nor does it contain any organism known to be a threat to human health. This certification is based on my knowledge of the material. Select the answer below that applies:

The waste was never exposed to potentially infectious material.   YES ☐  NO ☐

Chemical disinfection or some other form of sterilization has been applied to the waste.   YES ☐  NO ☐

I ACKNOWLEDGE THAT THIS PROFILE MEETS THE CLEAN HARBORS BATTERY PACKAGING REQUIREMENTS.   YES ☐  NO ☐

I ACKNOWLEDGE THAT MY FRIABLE ASBESTOS WASTE IS DOUBLE BAGGED AND WETTED.   YES ☐  NO ☐

SPECIFY THE SOURCE CODE ASSOCIATED WITH THE WASTE.   **G09**   SPECIFY THE FORM CODE ASSOCIATED WITH THE WASTE.   **W319**

 **CleanHarbors**    Clean Harbors Profile No. CH25175WTS

**E. CONSTITUENTS**

Are these based on testing or knowledge?   [✓] Knowledge   Testing

If based on knowledge, please describe in detail, the rationale applied to identify and characterize the waste material.  Please include reference to Material Safety Data Sheets (MSDS) when applicable.  Include the chemical or trade-name represented by the MSDS, and or detailed process or operating procedures which generate the waste.

| knowledge of products from labels and online msds and manufacturing processes present |

Please indicate which constituents below apply.  Concentrations must be entered when applicable to assist in accurate review and expedited approval of your waste profile. Please note that the total regulated metals and other constituents sections require answers.

| RCRA | REGULATED METALS | REGULATORY LEVEL (mg/l) | TCLP mg/l | TOTAL | UOM | NOT APPLICABLE |
|------|------------------|-------------------------|-----------|-------|-----|----------------|
| D004 | ARSENIC | 5.0 | | | | [✓] |
| D005 | BARIUM | 100.0 | | | | [✓] |
| D006 | CADMIUM | 1.0 | | | | [✓] |
| D007 | CHROMIUM | 5.0 | | | | [✓] |
| D008 | LEAD | 5.0 | | | | [✓] |
| D009 | MERCURY | 0.2 | | | | [✓] |
| D010 | SELENIUM | 1.0 | | | | [✓] |
| D011 | SILVER | 5.0 | | | | [✓] |

| | VOLATILE COMPOUNDS | | |
|------|--------------------|-----|--|
| D018 | BENZENE | 0.5 | |
| D019 | CARBON TETRACHLORIDE | 0.5 | |
| D021 | CHLOROBENZENE | 100.0 | |
| D022 | CHLOROFORM | 6.0 | |
| D028 | 1,2-DICHLOROETHANE | 0.5 | |
| D029 | 1,1-DICHLOROETHYLENE | 0.7 | |
| D035 | METHYL ETHYL KETONE | 200.0 | |
| D039 | TETRACHLOROETHYLENE | 0.7 | |
| D040 | TRICHLOROETHYLENE | 0.5 | |
| D043 | VINYL CHLORIDE | 0.2 | |

| | SEMI-VOLATILE COMPOUNDS | | |
|------|--------------------------|-------|--|
| D023 | o-CRESOL | 200.0 | |
| D024 | m-CRESOL | 200.0 | |
| D025 | p-CRESOL | 200.0 | |
| D026 | CRESOL (TOTAL) | 200.0 | |
| D027 | 1,4-DICHLOROBENZENE | 7.5 | |
| D030 | 2,4-DINITROTOLUENE | 0.13 | |
| D032 | HEXACHLOROBENZENE | 0.13 | |
| D033 | HEXACHLOROBUTADIENE | 0.5 | |
| D034 | HEXACHLOROETHANE | 3.0 | |
| D036 | NITROBENZENE | 2.0 | |
| D037 | PENTACHLOROPHENOL | 100.0 | |
| D038 | PYRIDINE | 5.0 | |
| D041 | 2,4,5-TRICHLOROPHENOL | 400.0 | |
| D042 | 2,4,6-TRICHLOROPHENOL | 2.0 | |

| | PESTICIDES AND HERBICIDES | | |
|------|---------------------------|-------|--|
| D012 | ENDRIN | 0.02 | |
| D013 | LINDANE | 0.4 | |
| D014 | METHOXYCHLOR | 10.0 | |
| D015 | TOXAPHENE | 0.5 | |
| D016 | 2,4-D | 10.0 | |
| D017 | 2,4,5-TP (SILVEX) | 1.0 | |
| D020 | CHLORDANE | 0.03 | |
| D031 | HEPTACHLOR (AND ITS EPOXIDE) | 0.008 | |

| OTHER CONSTITUENTS | MAX | UOM | NOT APPLICABLE |
|--------------------|-----|-----|----------------|
| BROMINE | 50.0000 | % | |
| CHLORINE | 10.0000 | % | |
| FLUORINE | | | [✓] |
| IODINE | | | [✓] |
| SULFUR | | | [✓] |
| POTASSIUM | 1000.0000 | PPM | |
| SODIUM | | | [✓] |
| AMMONIA | | | [✓] |
| CYANIDE AMENABLE | | | [✓] |
| CYANIDE REACTIVE | | | [✓] |
| CYANIDE TOTAL | | | [✓] |
| SULFIDE REACTIVE | | | [✓] |

| HOCs | PCBs |
|------|------|
| [✓] NONE | [✓] NONE |
| < 1000 PPM | < 50 PPM |
| >= 1000 PPM | >=50 PPM |

IF PCBS ARE PRESENT, IS THE WASTE REGULATED BY TSCA 40 CFR 761?

YES   [✓] NO

**ADDITIONAL HAZARDS**
DOES THIS WASTE HAVE ANY UNDISCLOSED HAZARDS OR PRIOR INCIDENTS ASSOCIATED WITH IT, WHICH COULD AFFECT THE WAY IT SHOULD BE HANDLED?

YES   [✓] NO   (if yes, explain)

CHOOSE ALL THAT APPLY

| DEA REGULATED SUBSTANCES | EXPLOSIVE | FUMING | OSHA REGULATED CARCINOGENS |
|--------------------------|-----------|--------|----------------------------|
| POLYMERIZABLE | RADIOACTIVE | REACTIVE MATERIAL | [✓] NONE OF THE ABOVE |

 Clean Harbors Profile No. CH25175WTS

**F. REGULATORY STATUS**

☑ YES ☐ NO   USEPA HAZARDOUS WASTE?

*D001*

☐ YES ☑ NO   DO ANY STATE WASTE CODES APPLY?

Texas Waste Code   *OUTS319H*

☐ YES ☑ NO   DO ANY CANADIAN PROVINCIAL WASTE CODES APPLY?

☑ YES ☐ NO   IS THIS WASTE PROHIBITED FROM LAND DISPOSAL WITHOUT FURTHER TREATMENT PER 40 CFR PART 268?

LDR CATEGORY:   *This is subject to LDR.*
VARIANCE INFO:

☐ YES ☑ NO   IS THIS A UNIVERSAL WASTE?

☐ YES ☐ NO   IS THE GENERATOR OF THE WASTE CLASSIFIED AS CONDITIONALLY EXEMPT SMALL QUANTITY GENERATOR (CESQG)?

☐ YES ☐ NO   IS THIS MATERIAL GOING TO BE MANAGED AS A RCRA EXEMPT COMMERCIAL PRODUCT, WHICH IS FUEL (40 CFR 261.2 (C)(2)(ii))?

☐ YES ☑ NO   DOES TREATMENT OF THIS WASTE GENERATE A F006 OR F019 SLUDGE?

☐ YES ☐ NO   IS THIS WASTE STREAM SUBJECT TO THE INORGANIC METAL BEARING WASTE PROHIBITION FOUND AT 40 CFR 268.3(C)?

☐ YES ☑ NO   DOES THIS WASTE CONTAIN VOC'S IN CONCENTRATIONS >=500 PPM?

☐ YES ☐ NO   DOES THE WASTE CONTAIN GREATER THAN 20% OF ORGANIC CONSTITUENTS WITH A VAPOR PRESSURE >= .3KPA (.044 PSIA)?

☐ YES ☑ NO   DOES THIS WASTE CONTAIN AN ORGANIC CONSTITUENT WHICH IN ITS PURE FORM HAS A VAPOR PRESSURE > 77 KPA (11.2 PSIA)?

☐ YES ☑ NO   IS THIS CERCLA REGULATED (SUPERFUND ) WASTE ?

☐ YES ☑ NO   IS THE WASTE SUBJECT TO ONE OF THE FOLLOWING NESHAP RULES?

Hazardous Organic NESHAP (HON) rule (subpart G)          Pharmaceuticals production (subpart GGG)

☑ YES ☑ NO   IF THIS IS A US EPA HAZARDOUS WASTE, DOES THIS WASTE STREAM CONTAIN BENZENE?

☐ YES ☐ NO   Does the waste stream come from a facility with one of the SIC codes listed under benzene NESHAP or is this waste regulated under the benzene NESHAP rules because the original source of the waste is from a chemical manufacturing, coke by-product recovery, or petroleum refinery process?

☐ YES ☐ NO   Is the generating source of this waste stream a facility with Total Annual Benzene (TAB) >10 Mg/year?

What is the TAB quantity for your facility?   [          ] Megagram/year (1 Mg = 2,200 lbs)

The basis for this determination is: Knowledge of the Waste Or Test Data          ☐ Knowledge   ☐ Testing

Describe the knowledge : [          ]

**G. DOT/TDG INFORMATION**

DOT/TDG PROPER SHIPPING NAME:

**RQ, UN1479, WASTE OXIDIZING SOLID, N.O.S., (LITHIUM HYPOCHLORITE, SODIUM DICHLOROISOCYANURATE, TRICHLOROISOCYANURATE), 5.1, PG II (D001)**

**H. TRANSPORTATION REQUIREMENTS**

ESTIMATED SHIPMENT FREQUENCY   ONE TIME   WEEKLY   MONTHLY ☑ QUARTERLY   YEARLY   OTHER *Other*

☑ CONTAINERIZED

*1000-* CONTAINERS/SHIPMENT
STORAGE CAPACITY:   *1200*

CONTAINER: ☐ CUBIC YARD BOX          ☐ PALLET

☐ TOTE TANK   ☑ DRUM
OTHER:          DRUM SIZE:  *5*

| BULK LIQUID | | BULK SOLID | | |
|---|---|---|---|---|
| GALLONS/SHIPMENT: *0 Min -0 Max* | GAL. | SHIPMENT UOM: | TON | YARD |
| | | TONS/YARDS/SHIPMENT: *0 Min - 0 Max* | | |

**I. SPECIAL REQUEST**

COMMENTS OR REQUESTS:

**GENERATOR'S CERTIFICATION**
I hereby certify that all information submitted in this and attached documents is correct to the best of my knowledge. I also certify that any samples submitted are representative of the actual waste. If Clean Harbors discovers a discrepancy during the approval process, Generator grants Clean Harbors the authority to amend the profile, as Clean Harbors deems necessary, to reflect the discrepancy.

AUTHORIZED SIGNATURE          NAME (PRINT)          TITLE          DATE

mgregg@wtsonline.com

This waste profile has been submitted using Clean Harbors' electronic signature system.

 Clean Harbors Profile No. CH25175WTS

**Addendum**

| D. COMPOSITION | | | | |
|---|---|---|---|---|
| CHEMICAL | MIN | -- | MAX | UOM |
| SODIUM BROMIDE | 1.00000 00 | -- | 20.0000 000 | % |
| SODIUM DICHLOROISOCYANURATE | 30.0000 000 | -- | 90.0000 000 | % |
| SODIUM PERSULFATE | 10.0000 000 | -- | 20.0000 000 | % |
| SULFAMIC ACID (DRY ACIDS) | 1.00000 00 | -- | 10.0000 000 | % |
| TRICHLOROISOCYANURATE | 30.0000 000 | -- | 90.0000 000 | % |
| ZINC SULFATE HEPTAHYDRATE | 0.10000 00 | -- | 3.00000 00 | % |

IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
CIVIL DIVISION

CARLA GIBSON, WINDELL LAWSON, JOYCE POWELL,            PLAINTIFFS
JEFF ROGERS, LEE WARDEN, KATHY WOOD and LILLIE
WOODS, on behalf of themselves and all others
similarly situated

vs.                                     Case No. CV-2013-0006-6

CLEAN HARBORS EL DORADO, LLC, a/k/a ENSCO
a/k/a MSE ENVIRONMENTAL, CLEAN HARBORS
ENVIRONMENTAL SERVICES, INC.            DEFENDANTS/THIRD-PARTY PLAINTIFFS

vs.

                                        THIRD-PARTY DEFENDANT
BIOLAB, INC. a/k/a BIO-LAB, INC. a/k/a BIO LAB, INC.

## AFFIDAVIT OF SERVICE FOR THIRD PARTY
## DEFENDANT BIOLAB, INC.

STATE OF ARKANSAS    )
                     ) ss.
COUNTY OF PULASKI

I, Rick A. Behring, Jr. being duly sworn, do state on oath:

1.    I am an attorney for defendant/third party plaintiff, Clean Harbors El Dorado,

LLC.

2.    On March 20, 2013, third party defendant, BioLab, Inc., was duly served with a

copy of the Summons and Amended Third Party Complaint by certified mail, return receipt

request, as more fully shown by the receipt attached hereto as Exhibit "A."

FURTHER AFFIANT SAITH NOT.

_____
Rick A. Behring, Jr.
Barber, McCaskill, Jones & Hale, P.A.
2700 Regions Center
400 W. Capitol Ave.
Little Rock, AR 72201
501-372-6175

Date: _____5/20/13_____

**FILED**
4-2-2013 @ 11:36a.m
CHERYL COCHRAN - WILSON, CLERK
BY_____ D.C.

SUBSCRIBED AND SWORN to before me, a Notary Public, on this __25th__ day of March, 2013.

_Marsha M. Andress_
NOTARY PUBLIC

My Commission Expires:

__4-1-20__
(SEAL)

MARSHA M. ANDRESS
NOTARY PUBLIC
My Commission Expires April 1, 2020
Commission #12375574
Pulaski County, Arkansas

## CERTIFICATE OF SERVICE

I, Rick A. Behring, Jr., hereby state that I have served a copy of the above pleading to the following on the 25 day of March, 2013, via email and U.S. Mail.

Robert L. Depper Jr., Esq.
Depper Law Firm
101 W. Main, Suite 200
El Dorado, AR 71730
**Attorney for Plaintiffs**

Allen P. Roberts, Esq.
Allen P. Roberts, P.A.
P.O. Box 280
Camden, AR 71711-0280
**Attorney for Plaintiffs**

Dale Smart, Esq.
Phillip A. Stone, Esq.
Smart & Stone
315 E. Main
El Dorado, AR 71730
**Attorneys for Plaintiffs**

Samuel E. Ledbetter, Esq.
McMath Woods, P.A.
711 West Third Street
Little Rock, AR 72201-2201
**Attorney for Plaintiffs**

David P. Price, Esq.
David P. Price, P.A.
P.O. Box 765
Magnolia, AR 71754-0765
**Attorney for Plaintiffs**

Rick A. Behring, Jr.

2

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

The Corporation Co.
Registered Agent
Bio Lab, Inc.
40 Technology Pkwy South
            Ste 300
Norcross, GA 30092

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)

7003 1010 0001 4499 1592

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540


EXHIBIT "A"